FLORA J. ERRETT v. RUSH B. WHEELER and Another.[1]

November 26, 1909.

Nos. 16,290—(105).

**Unrecorded Deed.**
> An unrecorded deed of real property is void as to a subsequent bona fide purchaser.

**Good Faith of Second Grantee — Burden of Proof.**
> The burden, however, rests upon the holder of the second conveyance to establish by competent evidence the good faith of his purchase, and it does not shift to the holder of the unrecorded deed upon the introduction of evidence making a prima facie case of bona fides of the second conveyance.

**Notice of Unrecorded Deed — Evidence.**
> Evidence *held* to sustain the finding of the trial court to the effect that defendant had notice of plaintiff's unrecorded deed and was not a bona fide purchaser.

**Reinstatement of Mortgage Once Satisfied.**
> The holder and owner of a mortgage upon real estate, who, with knowledge

[1] Reported in 123 N. W. 414.

of an outstanding adverse title, voluntarily, and without fraud or mistake of fact, or to protect any rights jeopardized by the mortgage, satisfied the same of record, *held*, on the facts stated in the opinion, not entitled to a reinstatement of the mortgage lien.

**Relief from Mistake of Law.**

Only in exceptional cases will a court of equity relieve a party from the consequences of his mistakes of law.

Action in the district court for Ramsey county to determine adverse claims to a certain vacant city lot. The answer alleged that defendant Rush B. Wheeler was the owner in fee simple of the lot, set up substantially the facts mentioned in the second paragraph of the opinion and alleged that defendant Wheeler had no knowledge or notice or any outstanding interest in said premises. It prayed the court in case defendant was adjudged not to be the owner of the lot, that the satisfaction of mortgage be canceled and the mortgage and the amount of delinquent taxes paid by defendants decreed to be subsisting liens against the premises superior to the title of the plaintiff, and that the premises be sold under the discretion of the court to pay said liens. The reply alleged that defendants at all times had full knowledge of plaintiff's deed from McKelvey, an unmarried man; that she had become the owner of the lot, and that the mortgage was fully paid. The case was tried before Bunn, J., who found that plaintiff was owner of the lot and defendants had no title to or interest in it, and ordered judgment in favor of plaintiff. From an order denying defendants' motion for a new trial, they appealed. Affirmed.

*William G. White,* for appellants.

In cases like the present the burden of proof is upon the defendant to show that he was a purchaser in good faith and for a valuable consideration, and this means that he was a purchaser "without notice" of plaintiff's rights. In all the cases cited in Wright v. Larson, 51 Minn. 321, and in all the Minnesota authorities, this general statement of the rule is to some extent qualified, and it is now the undoubted rule in Minnesota that proof of the payment of a valuable consideration in the ordinary course of business under cir-

cumstances free from suspicion makes out a prima facie case of good faith, and shifts the burden of proving notice upon the opposite party.

Plaintiff's case must go down, because she has entirely failed to sustain the burden upon her. Bank of Farmington v. Ellis, 30 Minn. 270, 271; Wright v. Larson, supra; Hogan v. Atlantic Ele. Co., 66 Minn. 344; Mead v. Randall, 68 Minn. 233, 237. An examination of the cases cited in the last case by Justice Mitchell will make it perfectly apparent that the general doctrine is qualified, so that wherever one who holds under a junior deed, and who is one of the parties to it, proves that he purchased the property in good faith and for a valuable consideration his prima facie case is fully made out, and the burden of proving the affirmative fact of notice is shifted to the opposing party.

*Frederick N. Dickson,* for respondent.

A purchaser is not a purchaser in good faith, although he paid a valuable consideration and did not have actual knowledge of the unrecorded conveyance, if he had knowledge of facts that ought to have put him on inquiry. McAlpine v. Resch, 82 Minn. 523; Martin v. Brown, 4 Minn. 201 (282); Beckfelt v. Donohue, 90 Minn. 430; Lloyd v. Simons, 90 Minn. 237, 241; O'Mulcahy v. Holley, 28 Minn. 31, 32, 33; Cummings v. Finnegan, 42 Minn. 524; Wilson v. Eigenbrodt, 30 Minn. 4; Mercantile Nat. Bank v. Parsons, 54 Minn. 56.

The burden was on defendant to show by a preponderance of the evidence his good faith, that is, that he took his subsequent deed for a valuable consideration and without any knowledge or notice whatever of the previous outstanding deed. Rausain v. Patten, 46 Minn. 308; Mead v. Randall, 68 Minn. 233, 236; Barber v. Robinson, 78 Minn. 193, 196; Fifield v. Norton, 79 Minn. 264, 266; Lloyd v. Simons, supra.

This burden did not "shift," but remained upon the defendant throughout the trial. 5 Am. & Eng. Enc. (2d Ed.) 30, 31, 32 and notes; Powers v. Russell, 13 Pick. 69; Demeules v. Jewel Tea Co., 103 Minn. 150, 153; Rapp v. Sarpy, 71 Neb. 382.

Defendant's prayer for affirmative relief rests entirely upon the theory that his mortgage was satisfied by mistake. If no mistake was made, he is not entitled to relief. Talbot v. Garretson, 31 Ore. 256; Frazee v. Inslee, 2 N. J. Eq. 239; St. Albans v. Farrar, 53 Vt. 542; Elliott v. Tainter, 88 Minn. 377.

The doctrine of subrogation will not be exercised in favor of a volunteer or an intermeddler, such as a person who pays without any obligation so to do, or one who, without any interest to protect, liquidates the debt of another. It is only invoked in favor of junior lien holders, who, in ignorance of prior intervening liens, satisfy a paramount lien. Emmert v. Thompson, 44 Minn. 386; Wadsworth v. Blake, 43 Minn. 509; Mosier's Appeal, 56 Pa. St. 76; 27 Am. & Eng. Enc. (2d Ed.) 255; Aetna Life Ins. Co. v. Middleport, 124 U. S. 534; 3 Pomeroy, Eq. Jur. 1212.

BROWN, J.

Action to determine adverse claims to certain real property, in which plaintiff had judgment, and defendant appealed from an order denying a new trial.

One McKelvey was formerly the owner of the property, lot 22, block 2, Wann's addition to St. Paul, and in 1895 mortgaged the same to Bessie M. Kern to secure a loan of $500. The mortgage was recorded at about the date of its execution, but has never been paid. On November 12, 1903, McKelvey by quitclaim deed conveyed the lot to plaintiff for the consideration of $5. The deed was not recorded until after the commencement of this action. On November 8, 1906, McKelvey by warranty deed in due form conveyed the lot to defendant Rush B. Wheeler; the consideration paid being the sum of $15. On November 3, 1906, prior to the conveyance just mentioned, defendant Wheeler purchased and became the owner of the Kern mortgage, paying therefor the sum of $25. The transfer of the mortgage was by written assignment in due and proper form. Thereafter Wheeler paid all the taxes due upon the property by a purchase of the same at a forfeited tax sale held on November 12, 1906. On November 16, 1906, he caused to be recorded in the office of the register of deeds his deed from McKelvey, the as-

signment of the Kern mortgage, and at the same time formally satisfied the mortgage of record.

From this statement it will be seen that both parties claim title through McKelvey. Plaintiff's deed was first in time, but defendant's, second in time, was first recorded. Plaintiff's deed was therefore void as to defendant's, provided defendant was a bona fide purchaser. Defendant claimed on the trial that he purchased the property in the ordinary course of business, for a valuable consideration, and without notice of the prior deed to plaintiff; while plaintiff contended that defendant had knowledge of the deed on the date of its execution, and was again expressly informed of its existence at about the time and before he recorded his deed and the satisfaction of the Kern mortgage.

Two questions are presented: (1) Whether the finding of the trial court to the effect that the defendant, at the time he obtained his title had notice of the prior deed to plaintiff, is sustained by the evidence; and (2) whether, even if he had such notice, and was not, therefore, a bona fide purchaser, defendant is entitled to judgment reinstating the satisfied mortgage.

1. Upon the first question little need be said. A careful examination of the record leads to the conclusion that the findings of the trial court are sustained by sufficient competent evidence. The testimony shows that defendant was familiar with the property, that some years prior to the time plaintiff purchased the same defendant sold it to McKelvey and negotiated for his client, Mrs. Kern, the mortgage here involved. He was well acquainted with McKelvey and transacted business for him. He also knew and had had previous business relations with plaintiff's husband. The testimony of plaintiff's husband is clear that at the time he procured for her the deed from McKelvey he expressly informed defendant of the fact. The evidence is also clear that, two days prior to the date on which defendant recorded his deed and satisfied the mortgage, he was again informed of the existence of plaintiff's deed. Defendant testified that he had no recollection of any conversation with plaintiff's husband, in which he was informed of plaintiff's deed. He did not expressly deny the fact, but said he did not remember any such conversation or

109 M.—11

information. He was positive, however, that plaintiff's husband did not inform him of the deed a day or two before he recorded his own and entered of record the satisfaction of the mortgage. Witness Thompson testified that prior to the recording of defendant's deed he personally informed him of plaintiff's deed and of her claim to the land, and at plaintiff's request urged defendant not to bid against her at the tax sale then about to take place. Defendant did not deny this conversation, but fixed the date thereof after the record of his deed. This evidence clearly tends to support plaintiff's contention that defendant was not a bona fide purchaser of the property, and, within the rule guiding this court, is sufficient to sustain the findings of the trial court. Maxfield v. Seabury, 81 Minn. 327, 84 N. W. 42. It does not matter whether the conclusions of the trial court were reached with little or much hesitation or reluctance. The rule guiding this court remains the same. Morrissey v. Guaranty Savings & Loan Assn., 81 Minn. 426, 84 N. W. 219.

Counsel for defendant with much earnestness urge upon our attention a question of burden of proof, insisting that in cases of this kind, where the holder of the subsequent deed offers evidence that he acquired the same in the usual course of business for a valuable consideration, and the transaction is free from suspicious circumstances, a prima facie case of bona fides is made out, and the burden of proof shifts to the shoulders of the unrecorded deed holder to overcome it by a fair preponderance of the evidence; and he insists that in this case plaintiff in her evidence failed to meet the requirements of the rule as invoked. The learned trial court correctly disposed of this point. There is no "shifting" of the burden of proof in cases of this kind. When McKelvey deeded the property to plaintiff, he parted with all his interest therein, and he had nothing to convey at the time of the execution of his deed to defendant. All his title and beneficial interest had previously passed to plaintiff. Defendant's deed, therefore, was of no force or effect as a transfer of the property to him, except by virtue and force of the recording statutes, and then only upon an affirmative showing of the bona fides of his purchase. The statutes declare that an unrecorded deed is void as against a subsequent purchaser in good faith, and to give effect to a

subsequent deed the burden is upon the holder thereof to establish the fact that he was a bona fide purchaser. This he must prove by competent evidence, and the burden rests upon him throughout the trial. The mere fact that certain evidence may make a prima facie case in his favor in no proper view shifts the laboring oar upon the holder of the prior deed. Demeules v. Jewel Tea Co., 103 Minn. 150, 114 N. W. 733, 14 L. R. A. (N. S.) 954, 123 Am. St. 315.

2. The second question, namely, whether defendant is entitled to a reinstatement of his mortgage, must be answered adversely to his contention. This branch of the case was presented by defendant's counsel mainly on the theory of the law of subrogation; and he insists that, to entitle defendant to the relief prayed for, it is not necessary that either fraud or mistake be shown. We are unable to sustain this position. There can be no doubt of the authority of a court of equity, in a proper case, to reinstate a satisfied mortgage or other lien upon real estate, when it appears to have been given under mistake, inadvertence, or procured by fraud. 27 Cyc. 1430, and authorities there cited; Banta v. Vreeland, 15 N. J. Eq. 103, 82 Am. Dec. 269. When voluntarily given by the mortgagee, or other lawful owner of the mortgage, without payment being made, or when necessary to protect some other interest, the equitable doctrine of subrogation can have no particular application in proceedings to set it aside, except perhaps by analogy. The right of subrogation, or as otherwise expressed, the right to be substituted in the place of another, as applied to the law of mortgages and the payment thereof, arises when a person, not primarily liable for the payment of the mortgage debt, nevertheless pays it for the purpose of protecting his own rights or interests, or under some agreement or arrangement with the debtor. In such cases, equity, speaking from the standpoint of good conscience, substitutes the person so discharging the debt to the place of the original creditor, so far as to enable him to enforce the security for the purpose of reimbursement. 27 Cyc. 1435.

But where the mortgagee, or other holder of the mortgage, voluntarily discharges the same, he pays no money to a third person to

whose rights he ought in equity to be substituted, and the principles of the law of subrogation do not apply. The grounds usually made the basis of relief from satisfied mortgages, judgments, or other liens upon real property are fraud or mistake—mistake of fact, or, perhaps, mistake of both law and fact, and in exceptional cases mistake of law. The authorities are collected and commented upon in a note to Atkinson v. Plumb (50 W. Va. 104), 58 L. R. A. 788. And although a case might arise where a mortgagee would be compelled before payment to satisfy a mortgage still owned and controlled by him, in order to protect other rights in the property, and thus give rise to the right of cancellation in equity under the analogous doctrine of subrogation, it is clear that such is not this case. There can be no claim here that the mortgage in question, which had been assigned to defendant and was then wholly under his control, was satisfied by him to protect any right or interest in the property which was jeopardized by its presence on the record.

We therefore pass to the question whether any other recognized ground for the relief sought, fraud or mistake, is shown by the record. No fraud is claimed, and it is clear that relief cannot be granted on that ground. The satisfaction was the voluntary act of defendant, without inducement or suggestion from plaintiff. Nor do we find any substantial reason for disturbing the conclusion of the trial court that there was no mistake of fact. Defendant was the owner of the mortgage, and, under the findings, satisfied it of record with knowledge of plaintiff's deed. He was informed of that deed at the time of its execution, three years before the transaction in question, and again two days before he satisfied the mortgage. He was, with respect to this property, an adversary of plaintiff, who was under no obligation to pay the mortgage, and in the face of her claim of title to the property discharged it, not to protect any interest of his likely otherwise to be prejudiced, or because of any fraud or unfair dealings on the part of plaintiff, but to perfect a title claimed by him to be adverse and superior to that held by plaintiff. Clearly, under such circumstances, he is not entitled to relief. Wadsworth v. Blake, 43 Minn. 509, 45 N. W. 1131; Emmert v. Thompson, 49

Minn. 386, 52 N. W. 31, 32 Am. St. 566; Faurot v. Neff, 32 Oh. St. 44; Atkinson v. Plumb, supra, and cases there cited.

Nor is defendant entitled to relief on the theory that he mistook his legal rights, or did not understand the legal effect of the cancellation of his mortgage. Mistake of law, unattended by any misunderstanding of the facts, presents, as a general rule, no ground for the interposition of equity. As remarked by Chief Justice Start in Truesdale v. Sidle, 65 Minn. 315, 67 N. W. 1004: "It is settled in this state that in special cases the court will relieve a party from the consequences of his mistakes of law;" but, "if nothing more than a bare mistake of law be shown, the relief will rarely, if ever, be granted." Though there is some conflict in the authorities upon the question, the Truesdale case correctly lays down the prevailing rule in this country. See authorities collected and commented upon in notes to Storrs v. Barker, 10 Am. Dec. 316, Page v. Higgins, 5 L. R. A. 152, and German v. Gueck, 6 L. R. A. 835. Reference to a few pertinent decisions will not be out of place.

Ignorance of the law was held, in Garwood v. Eldridge, 2 N. J. Eq. 145, 34 Am. Dec. 195, no ground for equitable relief. It appeared in that case that plaintiff purchased certain land which was incumbered by two mortgages. With the consent of the vendors he applied the purchase price of the land in payment of the mortgages and procured their discharge of record. Subsequent to the execution of the mortgages, but before plaintiff obtained his deed for the property, a third person obtained a judgment against the mortgagor, which was a lien upon the land. After the satisfaction of the mortgages, the judgment creditor proceeded to enforce his judgment, and plaintiff brought the action for a reinstatement of the mortgages on the ground of mistake of both law and fact. The court held that relief could not be granted on the ground of mistake of law, and that there was no mistake of fact; for plaintiff could have ascertained the existence of the intervening judgment by consulting the record. The case at bar is much stronger; for here defendant had actual notice of plaintiff's deed.

In the case of Talbot v. Garretson, 31 Ore. 256, 49 Pac. 978, it was held that, before a court of equity can interfere and restore the lien

of a mortgage canceled by mistake, it must appear that at the time of such cancellation the mortgagee did not know of the intervening lien over which he desired to obtain priority by the decree prayed for. In the course of the opinion in that case the court said: "This is so elementary that its mere statement is sufficient. Manifestly a mortgagee, who, with complete knowledge of the existence of another lien on the mortgaged premises, deliberately cancels and releases his security, cannot subsequently ask a court of equity to restore him to his original priority." Mistake of the legal effect of a cancellation of a mortgage was held no ground for restoring the mortgage in Kyes v. Merrill, 92 Wis. 32, 65 N. W. 735. There an assignee in insolvency proceedings, with knowledge of all the facts, discharged mortgages owned by the insolvent, and sought, on the theory of mistake, to have them reinstated. In Norman v. Norman, 26 S. C. 41, 11 S. E. 1096, it was held that a purchaser, mistakenly believing that a judgment under which he purchased at sheriff's sale was older than a mortgage lien, cannot be relieved of his bid on the ground .of mistake of fact, the mortgage being of record, nor on the ground of mistake of law.

A situation like that at bar was presented in Bentley v. Whittemore, 18 N. J. Eq. 366, where the court held that if "a mortgage on land is paid off by the purchaser of the equity of redemption, and canceled in fact on the record by the purchaser, while under the misapprehension that his title is good, he cannot, upon discovering that his title is not good, have the canceling set aside and the mortgage declared in force, on the ground that, had he then known of the defect in his title, he would have taken an assignment of the mortgage to perfect his title. The mistake must be a mistake as to matter of fact, and not as to a question of law." That case was substantially like that at bar, and follows and applies the general rule that mistakes in matters of legal rights furnish no basis for equitable relief. In disposing of that case the court said: "Courts of equity have power to correct mistakes and to protect from the consequences of them. It is one of the well-established heads of equity jurisdiction. * * * But it is only mistakes as to fact that entitle to this relief. It is well settled that this court will not relieve for a mistake as to the law.

Few transactions would be safe, if they could be set aside for a misapprehension of the legal rights of the parties to them. The doctrine is too well settled by authority, and too well supported by the reason on which it is founded, to be disregarded." See also to the same effect, Hurd v. Hall, 12 Wis. 125.

There is nothing exceptional in the facts of the case at bar. The amount involved certainly presents no sufficient reason for extending relief or declaring the case an exception; for defendant's pecuniary investment in the property does not exceed $100, and no other facts disclosed by the record remove the case from the general rule. Defendant erroneously assumed that his title was superior to plaintiff's, because his deed was first recorded; and from this error, one solely of law, no equitable relief can be granted on the facts disclosed. The authorities cited by defendant's counsel have reference more particularly to the rule of subrogation, and have no application to facts like those here before the court. If, as suggested in his brief, the facts were such as to constitute "legal notice" of plaintiff's rights, "without in any sense impugning the good faith of defendant," a different case would probably be presented. But, as we understand the law, actual notice of plaintiff's rights completely negatives good faith on the part of defendant. The case is wholly unlike Benson v. Markoe, 37 Minn. 30, 33 N. W. 38, 5 Am. St. 816, where the basis of the decision was in the main the unfair and inequitable conduct of the plaintiff. Such does not appear in this case.

There was no error in the refusal of a new trial on the ground of newly discovered evidence.

Order affirmed.