## Louisville Joint Stock Land Bank v. Bank of Pembroke.

(Decided June 5, 1928.)

### Appeal from Christian Circuit Court.

1. Pleading.—Where mortgagee advancing money to pay outstanding first mortgage, with understanding that it should receive first mortgage, sought to enforce priority of its lien against second mortgage existing at time it advanced money claimed subrogation to rights under first mortgage for first time in responsive pleadings to answer, counterclaim, and cross-petition of second mortgagee, held that question of subrogation was properly presented under Civil Code of Practice, section 98, stating what reply may contain.

2. Subrogation.—Subrogation is creature of equity resting upon principles of natural justice, and generally arises where party granting it has advanced money to pay debt which in event of default of debtor he will be bound to pay, or where one making payment had some interest to protect, or where money advanced to pay debt was under agreement with debtor or creditor, express or implied, that he should be subrogated to rights and remedies of creditor.

3. Mortgages.—It is general rule that, where mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as lien, providing granting of such relief does not operate to detriment of intervening rights of third persons who may have relied upon release and who are not chargeable with notice of mistake.

4. Mortgages.—Generally, where mortgage is released in good faith upon mortgagor's representation that there were no junior incumbrances on property, and new mortgage executed to secure larger amount, such mortgage will be restored as against junior mortgagee to priority so far as it can be done without placing him in worse position than he was in before release.

5. Subrogation.—Where, through neglect of abstractor in examining title and on representation of mortgagor that property was free from junior incumbrances, mortgagee advanced sum with understanding that he should receive first mortgage, and that money advanced would be used to pay off existing first mortgage, fact that second mortgage was on record at time held not to deprive mortgagee of right to subrogation under existing first mortgage; rights of second mortgagee not being prejudiced.

6. Subrogation.—Right of one advancing money to satisfy first mortgage on property to be subrogated thereto as against rights of junior incumbrancer, where money was advanced without knowledge of junior incumbrance through neglect of abstractor in examining title and on representation of mortgagor that property was free from junior incumbrances, held not defeated because a new mortgage was taken by one advancing the money, since equity of such person arises because its money was used to discharge the anterior lien under a mistaken belief that he would have a like security.

7. Subrogation.—Right of one advancing money to discharge first mortgage and taking new mortgage therefor to subrogation against junior incumbrancer, where money was advanced without knowledge of junior incumbrance, due to neglect of abstractor in examining title and representation of mortgagor that property was free from junior incumbrances, held not defeated, though representations of mortgagor be treated as mere mistake made in good faith without any design to defraud, where one advancing money relied on assurance of a first mortgage to secure it for money advanced to pay existing first lien.

McKENZIE & SMITH and ANDREW M. SEA, JR., for appellant.

SELDEN Y. TRIMBLE and DOUGLAS BELL for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

J. B. Carter owned a farm in Christian county, Ky. On December 2, 1918, he placed a first mortgage thereon to secure $6,000 borrowed from the City Bank & Trust Company of Hopkinsville. On August 16, 1921, Carter executed to the Bank of Pembroke a second mortgage on the same farm to secure $3,500, due in 6 months, which previously had been borrowed from it. In 1921, upon the advice of the cashier of the Bank of Pembroke, Carter made application to the Federal Land Bank of Louisville for a long-term loan of $6,500, to be secured by a first mortgage on the farm, the proceeds thereof to be used to extinguish the first and to reduce the second mortgage. Carter then had an understanding with the Bank of Pembroke that it would subordinate its mortgage to the new one, retaining a second mortgage for the remainder of its debt, maintaining the same relation in the new situation that then subsisted as to the two liens. The Federal Land Bank declined to make the long-term loan in the amount requested. Later, on October 21, 1922, Carter made an application to the Louisville Joint Stock Land Bank for a long-term loan of $6,500, to be secured and used in the same manner as was contemplated in his application to the Federal Land Bank. This loan was granted and closed on December 2, 1922. Appellant required Carter to furnish an abstract of title, which he did, but the abstractor inadvertently overlooked the second mortgage of the Bank of Pembroke. In his application for the loan, under a subdivision entitled "Incumbrances and Debts of Applicant," Carter had listed the City Bank & Trust Company mortgage. The application form directed that under that heading should be included all incumbrances, mortgages, and liens against the property offered for security and also all amounts due on account of purchase money, notes, or contracts covering purchase of the land. There was also a place under that subdivision where applicant should indicate whether he expected to pay the debt out of the proceeds of the loan. Carter there indicated only the City Bank & Trust Company loan, part of which was held by Trimble, and also answered that he expected to pay that debt out of the proceeds of the new loan. The same subdivision required him also to list his other debts and obligations and state whether secured by chattel or other mortgage and the property held as security. Under this part of the subdivision Carter listed the Bank of Pembroke second mort-

gage of $3,000 (not $3,500), but did not indicate what property was covered by the second mortgage or whether he intended to pay it out of the loan. Carter also made an affidavit on December 2, 1922, when the loan was closed, in which he stated that there was no prior or superior lien to that of the Louisville Joint Stock Land Bank against the land described in the mortgage, and its lien was the first and best lien against the said land. When the loan was approved, the money was sent to an attorney at Hopkinsville, who used $6,303.60 thereof to pay the City Bank & Trust Company debt, and caused the mortgage securing it to be released on the margin of the record. Certain fees were paid for Carter, and the balance of the new loan amounting to $43.40 was paid to him by check. He deposited the check at the Bank of Pembroke, and then, or soon thereafter, paid some interest on the debt due it. The mortgage to appellant recited that it was a first lien, and was acknowledged by Carter and wife before Douglas Graham, a notary public, who was also cashier of the Bank of Pembroke. It is clear that appellant, when it made the loan, had no actual knowledge of the mortgage of the Bank of Pembroke. Carter failed to meet his obligations, and was adjudicated a bankrupt. The farm depreciated in value, and in March, 1924, the Bank of Pembroke let it be known that it would claim a first lien under its mortgage, and this litigation resulted. The lower court decided in favor of the Bank of Pembroke, and adjudged it priority over the Louisville Joint Stock Land Bank, and the latter bank has prosecuted this appeal. The sole question involved is the priority between the lien of the appellant and that of appellee.

The appellant rests its right to priority on two grounds: It is claimed, first, that the Bank of Pembroke is estopped to assert its first lien; and, second, that it has in equity a right to be subrogated to the first mortgage lien of the City Bank & Trust Company, which its funds were used to discharge. The appellee stands on its strict legal right of precedence by virtue of its mortgage being first on record. The claim of estoppel is predicated upon pleading and proof to the effect that appellee, knowing that appellant was lending its money to Carter under the agreement, upon the sworn representation, and with the belief that it was getting a first mortgage, maintained silence as to its mortgage, when it was under duty to speak, and was thereby precluded from claiming priority

as against it. The Bank of Pembroke insists that its mortgage was on record, and it had a right to remain silent in the belief that appellant would inform itself as to matters of record. The claim of subrogation is based upon the fact that appellant's money paid the City Bank & Trust Company debt, which was secured by a first lien, and, since appellant made a mistake in supposing that its own mortgage was first, it ought in equity to be restored to the position held by the City Bank & Trust Company. The appellee answers that the City Bank & Trust Company debt was paid and a new mortgage taken for a larger amount, and that, because of the negligence of the abstractor in failing to discover the second mortgage, the appellant has lost any right to claim subrogation.

If it should be found that the equities of this case require that the lien of first dignity be restored to the appellant in so far as its money was applied to its payment, it will be unnecessary to discuss or pass upon the claim of estoppel, and we will address ourselves, first, to the asserted right of subrogation.

Criticism is made that the claim of subrogation was first set up in responsive pleadings to the answer, counterclaim, and cross-petition of the Bank of Pembroke, whereas it should have been set up by an amended petition. We think the pleadings under the facts appearing in this record properly presented the question. Civil Code, section 98. Early v. Early, 182 Ky. 757, 207 S. W. 466.

Subrogation is a creature of equity, and rests upon principles of natural justice. Without attempting a comprehensive classification of cases in which the doctrine of subrogation may be applied, it is generally held that the right of subrogation will arise where the party claiming it has advanced money to pay a debt which, in the event of default by the debtor, he would be bound to pay; or where the one making the payment had some interest to protect; or where the money advanced to pay the debt was under an agreement with the debtor, or the creditor, express or implied, that he should be subrogated to the rights and remedies of the creditor. Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931; Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834. The transaction with the debtor in this case was substantially within the principle last stated. There was an agreement with the debtor that the appellant should make him a loan to be secured by a first mortgage on the property, the proceeds of which were to be applied first to the pay-

ment of the existing mortgage. The money was so applied, and the mortgage released on the record. The equity of appellee in this case was not affected by the arrangement, and its consent, if we assume it was not given, was not necessary to perfect the right of the appellant. It is the general rule that, where a mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as a lien, provided the granting of such relief does not operate to the detriment of intervening rights of third persons who may have relied upon the release and who are not chargeable with notice of the mistake or who will not be prejudiced by reinstatement of the lien. 41 C. J. p. 586. The same rule is applicable where the debtor has been guilty of fraud, especially as against the holder of an intermediate lien who will not be prejudiced thereby. Bormann v. Hatfield, 96 Wash. 270, 164 P. 921, L. R. A. 1917E, 1052; Farmers' & Drovers' Ins. Co. v. German Ins. Co., 79 Ky. 598.

If the affidavit of Carter be treated as a fraudulent act, the principle applies and would warrant the court in reinstating appellant to the position held by the City Bank & Trust Company, especially as it would not in any way prejudice the appellee, but merely remit it to the position it had held. In the case of Farmers' & Drovers' Ins. Co. v. German Insurance Co., 79 Ky. 598, the fraud consisted in representations and assurances of the debtor alone, and were no stronger than the written and sworn representations in this case. In the case of Bormann v. Hatfield, above cited, it was held that a mortgage, released in good faith upon the mortgagor's representation that there were no junior incumbrances on the property, and his execution of a new mortgage to secure a larger amount, will be restored as against a junior mortgagee so far as it can be done without placing him in a worse position than he was in before the release. This seems to be the general rule. 27 Cyc. 1431; Annotations, L. R. A. 1917E, p. 1055; Errett v. Wheeler, 109 Minn. 157, 123 N. W. 414, 26 L. R. A. (N. S.) page 816; Wilton v. Mayberry, 75 Wis. 191, 43 N. W. 901, 6 L. R. A. 61, 17 Am. St. Rep. 193, and note; Baker v. Baker, 2 S. D. 261, 49 N. W. 1064, 39 Am. St. Rep. 776; Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78; Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566, and note. See note to Atkisson v. Plumb, 58 L. R. A. p. 796; Union Mortgage Bk. & Tr. Co. v. Peters, 72 Miss. 1058,

18 So. 497, 30 L. R. A. 829; Crumlish v. Cent. Improvement Co., 38 W. Va., 390, 18 S. E. 456, 23 L. R. A. 131, 45 Am. St. Rep. 872; Banta v. Vreeland, 15 N. J. Eq. 103, 82 Am. Dec. 269.

But it is argued that the mortgage of appellee was on record and the appellant, being charged with knowledge thereof, could not by reason of its negligence claim subrogation. We have held, however, that the maxim, "The laws assist those who are vigilant, not those who sleep upon their rights," does not apply to a case of this kind as any apparent advantage which appellee may have is the result not of its vigilance, but of a mistake on the part of appellant, and a false statement by the mortgagor. Farmers' & Drovers' Ins. Co. v. German Insurance Co., 79 Ky. 598.

The negligence of the abstractor did not injure the appellee. It did nothing or paid nothing in reliance on the mistake. By restoring appellant to the position of the City Bank & Trust Company as first lienor, the appellee is not injured, but still has all that it expected to get when it took the second mortgage. The same argument was advanced and answered in the case of Bormann v. Hatfield, supra, in these words:

"On the other hand, if mere constructive knowledge springing from the fact that the second mortgage is of record at the time the first mortgage is released and the new mortgage is recorded is sufficient to preclude the holder of the first mortgage from relief in equity against the release of his mortgage, a mortgage so released could never be restored as against the second mortgage if the latter had in fact been lodged for record. The doctrine would then be restricted in its application to cases where the second mortgage was not of record at the time of the release and, under such circumstances, there would be no need for a restoration of the released mortgage. In Jones, Mortgages, sec. 971, it is said: 'When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien.' This was done in a case where the holder of a first mortgage, in ignorance of the existence of a subsequent one on the premises, released his mortgage and took a new one. There was no evidence of mistake except such as might be inferred from the mortgagee's ignorance of the existence of

the intermediate mortgage, and there was no evidence that he would not have made this arrangement had he known this fact; but it was considered that although the court was not at liberty to infer facts not proved, yet that it was at liberty to draw all the inferences which logically and naturally follow from the facts proved; that it is not an act of reasonable prudence and caution such as men commonly use in the conduct of business affairs for one having a first mortgage upon property, without consideration or other apparent motive, to release it, and take a new mortgage subject to a prior lien of a considerable amount; and therefore it may be inferred that the mortgagee would not have made the release had he known of the intervening mortgage. A court of equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction.'

"We are of the opinion that the rule, supported both by reason and by authority, is to the effect that, when the holder of a first mortgage takes a new mortgage as a substitute therefor and releases the original mortgage, in ignorance of an intervening lien upon the mortgaged premises, and especially if the release is induced by fraud or misrepresentation on the part of the mortgagor, equity will, in the absence of laches or other disqualifying fact, restore and reinstate the lien of the first mortgage and give it its original priority. The rule is, of course, subject to the limitation or qualification that, by restoring the discharged lien, the holder of the junior encumbrance must not be placed in a worse position than he would have occupied had the senior encumbrance not been released. To deny this relief and to refuse to restore for the protection of the first mortgagee the lien of the prior mortgage would be to permit the second mortgagee to unjustly profit by the mistake of the. former, or to unconscionably avail himself of the fruits of a palpable fraud perpetuated by another to the injury of the victim of the fraud. Therefore a subsequent mortgagee, who becomes such anterior to the discharge of a prior mortgage, cannot, with any show of reason or justice, claim to be injured by the setting aside of the subsequent release and restoring the lien of the prior mortgage. He is in no way prejudiced, but is left to enjoy ex-

actly what he expected to get when he accepted the second mortgage. Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923; Bruse v. Nelson, 35 Iowa, 157; Hutchinson v. Swartsweller, 31 N. J. Eq. 205; Robinson v. Sampson, 23 Me. 388; Cobb v. Dyer, 69 Me. 494; London & N. W. American Mfg. Co. v. Tracy, 58 Minn. 201, 59 N. W. 1001; American Bonding Co. v. National Mechanics' Bank (97 Md. 598, 55 Atl. 395) 99 Am. St. 466, note.''

See Sullivan v. Williams, 210 Ala. 363, 98 So. 186, 33 A. L. R. 147, annotation page 149.

Where one party has an equity better than the other, priority of time is immaterial, and the superior equity must prevail. Frost v. Wolf, 77 Tex. 455, 14 S. W. 440, 19 Am. St. Rep. 761.

A distinction is sought to be discovered in the circumstance that the new mortgage was taken by a new party who lent the money to pay the first mortgage held by another. U. S. v. Grover (D. C.) 227, F. 181. But the equity does not arise from the fact that the same party has taken a new mortgage, but because the money of the claimant has been used to discharge the anterior lien under a mistaken belief that he would have a like security.

In some cases the money had been lent, as in this case, expressly for the purpose of paying the prior lien, and, when the new security taken at the time became unavailable or less valuable, restoration of the first lien was decreed to the lender. Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566; Home Savings Bank v. Bierstadt, 168 Ill. 618, 48 N. E. 161, 61 Am. St. Rep. 146.

The principles we have announced permeate the equity jurisprudence of this country, and have found application in a wide range of cases arising under circumstances somewhat variant, but substantially similar to those here appearing. Seeley v. Bacon (N. J. Ch.) 34 A. 139; Institute Bldg. Ass'n v. Edwards, 81 N. J. Eq. 359, 86 A. 962; Griffin v. International Trust Co. (C. C. A) 161 F. 48; Matzen v. Shaeffer, 65 Cal. 81, 3 P. 92; Gans v. Thieme, 93 N. Y. 232; Yaple v. Stephens, 36 Kan. 680, 14 P. 222; Bacon v. Goodnow, 59 N. H. 415.

If the representations and affidavit of Carter be treated as mere mistakes, made in good faith without any design to defraud, the result would be the same, since the appellant relied upon the assurance of a first mortgage

to secure it for the money advanced to pay an existing first lien. The equity of appellant is not affected or altered by the fact that its action was induced by fraud or mere mistake, as the law is the same in either event.

It is obvious from a consideration of the equities of this case, in the light of the authorities indicated, that the court below erred in refusing to adjudge appellant priority over appellee to the extent that its money was applied to the original debt secured by the first mortgage. The conclusion we have reached on this branch of the case relieves us of the necessity of considering or passing on the question of estoppel raised in the record, relied upon by appellant, and discussed in the briefs.

The judgment is reversed, with directions to enter a decree in accordance with this opinion.