**CITIZENS STATE BANK,
Plaintiff–Appellant,**

v.

**UNITED STATES of America, on Behalf of its INTERNAL REVENUE SERVICES; Liberty National Bank, Defendants–Appellees.**

**No. 90–6004.**

United States Court of Appeals,
Sixth Circuit.

Submitted March 28, 1991.

Decided May 2, 1991.

---

Ronald J. Bamberger, Bamberger & Abshier, Owensboro, Ky., for Citizens State Bank.

Joseph M. Whittle, U.S. Atty., Scott C. Cox, Office of the U.S. Atty., Louisville, Ky., Gregory S. Hrebiniak, Gary R. Allen, Acting Chief, David English Carmack, Doris D. Coles, U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for U.S.

M. Deane Stewart, Morgan & Pottinger, Louisville, Ky., for Liberty Nat. Bank.

Before JONES and SUHRHEINRICH, Circuit Judges, and FEIKENS, Senior District Judge.*

PER CURIAM.

Plaintiff Citizens State Bank ("CSB") appeals the district court's declaratory judgment finding that a federal tax lien is superior to CSB's lien against funds remaining in an escrow account. For the reasons that follow, we affirm.

## I.

This action arises out of a lien priority dispute between CSB and the United States, on behalf of the Internal Revenue Service ("IRS"), as to distribution of the proceeds from real estate formerly owned by J. Elliott Haney, Jr. and Dorothy D. Haney.

The Haneys once owned real estate located at 4103 Fairfax Court in Owensboro, Kentucky. Pursuant to two notes secured by mortgages on the real estate, the Haneys were indebted to CSB. The first loan, No. 62571, was secured by a mortgage dated June 18, 1975, and recorded June 19, 1975. The second loan, No. 67829, was secured by a mortgage dated April 1, 1983, and properly recorded on April 4, 1983. On April 6, 1984, CSB and the Haneys executed a promissory note renewing this debt secured by the April 1, 1983 mortgage.

On August 13, 1985, CSB filed an action in Daviess Circuit Court to foreclose on its mortgage interests in the Haneys property. Prior to a hearing on CSB's motion for summary judgment, the Haneys filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky. The Haneys' Chapter 11 Plan of Reorganization was confirmed by the Bankruptcy Court on February 26, 1987.

On October 15, 1987, CSB recorded a release of the April 1, 1983 mortgage. This mortgage involved two tracts of land—one tract of residential property ("tract I") and a second tract which incorporated thirteen lots ("tract II"). CSB contends that it inadvertently recorded a total release of the mortgage. However, CSB claims that it only intended to release the mortgage as to tract II, but not the mortgage as to the residential property. It is undisputed that both the Haneys and CSB

---

* The Honorable John Feikens, Senior District Judge for the Eastern District of Michigan, sitting by designation.

continued business relations as though the mortgage was released only as to tract II.

On January 5, 1988, the IRS made a tax assessment against Mr. Haney in the amount of $54,385.13. On January 7, the IRS recorded a federal tax lien pursuant to section 6321 of the Internal Revenue Code. This lien encumbered all property belonging to the Haneys.

Subsequent to the IRS lien, the Haneys defaulted on their Plan of Reorganization and their Chapter 11 case was converted into one under Chapter 7 by the Bankruptcy Court on May 11, 1988. The Bankruptcy Court entered orders officially abandoning the property and on July 27, 1988, the Daviess Circuit Court entered an agreed judgment transferring the property to CSB. Later CSB found a buyer for the property, and CSB and the IRS agreed to the sale of the property free of any liens with the liens of each party attaching to the net proceeds of $132,422.46. The proceeds were deposited into an interest bearing escrow account.

On January 4, 1990, CSB filed a motion for partial summary judgment seeking a partial distribution of the funds in escrow. The government did not oppose the motion, conceding that the mortgages dated June 18, 1975, and February 28, 1984, relating to No. 62571, were prior to the federal lien. The court granted partial summary judgment in favor of CSB adjudging CSB a first priority lien position on $59,423.32 plus interest of $13.27 per day from May 8, 1989.

On February 13, 1990, CSB filed a motion for summary judgment on the balance in the escrow fund, asserting that its interest was superior to that of the IRS. The bank argued that the April 1, 1983 mortgage had been erroneously released and that the priority position of its April 1 mortgage should be reinstated.

In a memorandum opinion dated July 5, 1990, the court denied CSB's motion and granted summary judgment in favor of the IRS. The court found that the April 1, 1983 mortgage was unconditionally released. The court further concluded that the federal tax lien occurred prior to the time any "security interest" arose in favor of CSB and therefore, the tax lien had priority over any equitable interest CSB might have retained. This timely appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*. *Pinney Dock and Transport Co. v. Penn. Central Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Since one of the claims present in this case represents a lien for federal taxes, federal law governs. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). Under section 6321 of the Internal Revenue Code of 1986, a lien upon all property owned by an individual comes into existence automatically if the individual refuses, after demand, to pay any tax for which the individual is liable. 26 U.S.C. § 6321 (1988). In this case, the IRS recorded its tax lien against the Haneys in the Daviess County Registrar of Deeds on January 7, 1988.

Priority of liens against an individual's property is also governed by statute. Section 6323 provides in relevant part:

(a) The lien imposed by section 6321 shall not be valid as against a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirement of subsection (f) has been filed by the Secretary.

\*     \*     \*     \*     \*     \*

(h) For the purposes of this section ...—

(1) The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. *A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation*, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323 (emphasis added). CSB argues that its April 1, 1983 mortgage has priority over the IRS's federal tax lien because it is protected by a "security interest" within the meaning of section 6323.

CSB asserts two separate bases for its security interest in the subject property. First, CSB asserts that a valid security interest exists under section 6323(h)(1) if that security interest at some point "has become protected under local law." CSB argues that Congress's use of the language "has become" rather than a present tense formulation such as "is" in section 6323 suggests that Congress sought to protect the priority of security interests over federal tax liens if they ever had become valid under local law, rather than only presently valid security interests. Since CSB's April 1, 1983 mortgage was properly recorded, its security interest had been perfected under local law. Further, under the traditional "first in time, first in right" rule of property, CSB's once valid security interest would take priority over the IRS's subsequently recorded tax lien. In other words, CSB argues that under section 6323, the key is whose interest was secured first, not whether that security interest has continuing validity.

We think CSB's argument is based upon an erroneous reading of section 6323(h)(1). It would appear that CSB's interpretation of the statute gets much of its appeal from the fact that in this case, CSB mistakenly released its mortgage and so it seems reasonable to assume that its once valid security interest mistakenly released should not be subrogated to a subsequent claim. A more reasonable interpretation of the language "has become" in section 6323 is that Congress intended the protection to cover present security interests which have been perfected at some point prior to the imposition of the federal tax lien. Thus, the language would exclude security interests which have not yet become perfected under local law, as well as those interests which have been released. If Congress had intended to create the effect sought by CSB, it would have worded the statute, "had become" rather than "has become." If it had used that past perfect tense, Congress

would have indicated that it desired to cover all security interests which had ever been protected under local law. However, the language "has become" suggests that Congress intended to cover only those security interests which exist presently, and have become valid prior to the federal tax lien. Thus, we find that CSB does not have a continuing right to priority over the IRS based upon its April 1, 1983 security interest under section 6323.

The question then becomes whether CSB has a presently valid security interest under local law which would meet the criteria of section 6323. CSB argues that it does. It relies on two Kentucky Supreme Court cases which suggest that if a mortgage is released by mistake, equity will restore the mortgage and its old priority absent any reliance by new parties upon the release of the old rights.

In *Farmers and Drovers' Ins. Co. v. German Ins. Co.*, 79 Ky. 598 (1881), the Court considered a case in which a mortgagee mistakenly released its first mortgage and entered a new mortgage under the mistaken impression that there were no other mortgages on the property which would take priority over its new loan. Both the owner of the land and the second mortgage holder knew that the second mortgage existed and did not notify the first mortgagee of the existence of additional mortgages on the property. Later, when the owner defaulted on the mortgages, the second mortgage holder sought to take advantage of the first holder's release of its mortgage, in order to assume priority in the distribution of the landowner's assets. The Court ultimately rejected the claim of the second mortgage holder:

> The principle upon which this case is decided, and which runs through all cases of this description, is, that when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.

*Id.* at 602. Thus, *Farmers and Drovers'* suggests that a mortgagee who mistakenly releases a mortgage is entitled to have that mortgage reinstated with its old priority rights so long as the later claimants did not rely to their detriment on the release in acquiring their new rights.

Similarly, in *Louisville Joint Stock Land Bank v. Bank of Pembroke*, 225 Ky. 375, 9 S.W.2d 113 (1928), the court considered a situation where a mortgage was mistakenly released and a second mortgage issued on the belief that the priority of the first mortgage would be retained because the property was not otherwise encumbered. In such circumstances the court stated:

> It is the general rule that, where a mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as a lien, provided the granting of such relief does not operate to the detriment of intervening rights of third persons who may have relied upon the release and who are not chargeable with notice of the mistake or who will not be prejudiced by reinstatement of the lien.

*Id.*, 9 S.W.2d at 115. The court goes on to interpret the requirement of no "prejudice" to third parties to require that the reinstatement of the old mortgage can be done without placing the subsequent claimants in a worse position than they would have been in had the mortgage not been mistakenly released in the first place. *Id.*

CSB asserts that under the rules articulated in *Farmers and Drovers'* and in *Louisville Joint Stock Land Bank*, it is entitled to reinstatement of its prior mortgage and of its security interest for section 6323 purposes because it released its mortgage by mistake and the IRS did not rely on this mistake in creating its tax lien. Further, it is undisputed that the IRS did not do any title search on the Haneys' properties before recording the lien and hence could not have relied upon the release. In fact, the tax lien arises by operation of law regardless of any encumbrances upon the property the lien is asserted against.

Rather than trying to distinguish *Farmers and Drovers'* and *Louisville Joint Stock Land Bank*, the United States relies on contrary authority and Kentucky statutory law. The government argues that while CSB had a valid security interest based upon its proper recording of its April 1, 1983 mortgage, that valid interest was fully and validly released by CSB on October 15, 1987. This release was accomplished by a separate instrument from the original mortgage, and fully complied with all the requirements for validity under Ky. Rev.Stat.Ann. § 382.360 (Baldwin 1989). As a valid release has the effect of restoring the full title in the land to the mortgagor, the government argues that CSB did not have any further interest in the subject property. Thus, at best, CSB had a "mere equitable right" to have its mortgage reinstated.

■■■ Under Kentucky's recording statute, an equitable mortgage has the same effect as an unrecorded mortgage. *See* Ky.Rev.Stat.Ann. § 382.270 (1989); *Borg–Warner Acceptance v. First National Bank*, 577 S.W.2d 29, 32 (Ky.Ct.App.1979). Further, the statute provides that no unrecorded mortgage "shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors[.]" Ky.Rev.Stat.Ann. § 382.270. Thus, under Kentucky law, an unrecorded, or an equitable mortgage is not protected against claims of creditors without notice. *Borg–Warner*, 577 S.W.2d at 32. It is undisputed that the IRS did not have notice of CSB's claim, and that the mistake was not apparent on the face of the release, even if the IRS had conducted a title search on the Haneys' property. Thus, the United States argues that CSB has no current security interest in the subject property which would establish the priority of its claim over the IRS tax lien under section 6323. The district court found that CSB had no present security interest in the property which established its priority over the IRS because its release of the mortgage dissolved any remaining interest CSB had in the property. Further, the court found that any interest CSB might have had was

a mere equitable right to have its mortgage reinstated and not a presently valid security interest. We agree.[1]

The district court also held that even if a security interest is created by equitably reinstating a mistakenly released mortgage, the equity only works prospectively and does not affect claims of other lien-holders. As we conclude that the district court correctly found that CSB did not have any security interest in the subject property, we need not address the correctness of the district court's alternative holding presuming that such an interest might exist.

### III.

The judgment of the district court is hereby AFFIRMED.

---

**1.** Neither of the parties discuss the relationship of the Kentucky Supreme Court's precedent in *Farmers and Drovers'* and *Louisville Joint Stock Bank* and the current statutory law relied upon by the United States. However, our review of these cases indicates that the Kentucky Supreme Court did not rely upon constitutional interpretation to reach its conclusions in *Farmers and Drovers'* and *Louisville Joint Stock Bank.* Further, the Kentucky recording statutes were enacted subsequent to those precedents and change the lien priority rule indicated in those cases. Thus, we find that the statutes are controlling.