Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge CONRAD joined. Judge LUTTIG wrote a dissenting opinion.
NIEMEYER, Circuit Judge.
Brenda Clydette Dove Collier and the Internal Revenue Service (“IRS”), the parties to the adversary proceeding on appeal, have each filed a secured claim against Charco, Inc., d/b/a Dove Signs, the debtor in this Chapter 7 bankruptcy proceeding. We now decide which claim has priority in the limited funds that remain in the bankruptcy estate.
Collier obtained a $121,500 judgment in a Virginia court against the debtor and *303 filed it in West Virginia before the IRS recorded its $82,000 tax lien against the debtor, but she recorded her judgment in West Virginia after the tax lien was recorded. Even though, under West Virginia law, Collier obtained a lien on the debtor’s real property when she obtained her judgment in West Virginia against the debtor, under federal law an IRS tax lien still takes priority over an unrecorded judgment lien “[i]f recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property.” 26 C.F.R. (“Treasury Regulation”) § 301.6323(h)-l(g). West Virginia law requires recordation for a judgment to become “good as against” deed-of-trust creditors, one class of third-party lienors, even though recordation is not required before a judgment becomes good as against other third-party lienors.
Construing Treasury Regulation 301.6323(h)-l(g), we hold that the Regulation gives the United States’ tax lien priority over Collier’s unrecorded West Virginia judgment lien. Even though Collier recorded her judgment lien, she did so after the IRS had recorded the tax lien. Accordingly, we affirm the district court’s judgment denying Collier lien priority.
I
On June 10, 1996, the IRS assessed $18,227.56 in unpaid taxes against Charco, Inc. (“Charco”), of Princeton, West Virginia, and on September 16, 1996, another $63,847.15. It then recorded a combined tax hen of $82,074.71 on November 26, 1996, in the Mercer County (West Virginia) Commission Clerk’s Office because Charco’s real property was located in Mercer County.
Collier obtained a judgment against Charco in Roanoke County (Virginia) Circuit Court on September 19, 1996, in the amount of $121,500 plus interest and costs. To enforce that judgment in West Virginia against Charco’s real property, Collier filed the judgment in the Mercer County Circuit Court on October 21, 1996, pursuant to the Uniform Enforcement of Foreign Judgments Act, W. Va.Code § 55-14-2, which provides that a “judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner.” She recorded her judgment with the Mercer County Commission Clerk’s Office on January 23,1997.
Thus, Collier obtained judgment in West Virginia against Charco before the IRS recorded the United States’ tax lien, but she recorded her judgment after the IRS had recorded the tax lien.
In September 2000, creditors of Charco placed it in involuntary bankruptcy under Chapter 7 of the Bankruptcy Code. During the proceedings, both the IRS and Collier filed proofs of secured claims — the IRS for the United States, in the amount of $254,880.92; and Collier, in the amount of $172,954.12. The proceeds from the sale of Charco’s real property during the bankruptcy proceedings amounted to only $96,275.84 after deducting administrative costs and attorneys fees.
Collier commenced this adversary proceeding in the bankruptcy case against the United States “by and through” the IRS, seeking a declaratory judgment that her judgment lien had priority over the United States’ tax lien with respect to the remaining funds in the bankruptcy estate. The bankruptcy court ruled that the United States’ tax lien had priority, and the district court affirmed. Both courts reasoned that Collier’s judgment lien had not been “perfected,” as federal regulations define *304 the term, until Collier recorded it in January 1997. This appeal followed.
II
Collier contends that when she filed her Virginia judgment against Charco in West Virginia on October 21, 1996, she “perfected” a lien against Charco’s real property pursuant to West Virginia Code § 38-3-6, which provides in part that “[ejvery judgment for money rendered in this State ... shall be a lien on all the real estate” of the defendant within the State. Believing she had “perfected” her lien against Charco’s property before the IRS recorded its lien, she asserts priority in the remaining funds in Charco’s bankruptcy estate.
The IRS contends that Collier did not “perfect” her judgment lien until she recorded it in January 1997 and that the IRS has priority because it recorded its tax lien in November 1996.
The priority of federal tax liens as against competing liens asserted against a taxpayer’s property is governed by federal law. Aquilino v. United States, 363 U.S. 509, 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).
The Internal Revenue Code provides that the amount of assessed tax, interest, and penalty not paid by a person after demand becomes a lien in favor of the United States “upon all property and rights to property” belonging to the person. 26 U.S.C. § 6321. The lien “arise[s] at the time the assessment is made.” Id. § 6322. But it is not “valid as against any purchaser, holder of a security interest, mechanic’s lienor, or judgment lien creditor ” until it is recorded locally. Id. § 6323 (emphasis added). The priority between a recorded tax lien and a judgment lien is governed by the rule of “first in time, first in right.” United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); see also United States v. Equitable Life Assurance Soc’y of the United States, 384 U.S. 323, 327-28, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); Air Power, Inc. v. United States, 741 F.2d 53, 55 (4th Cir.1984). But before a judgment lienholder can have priority over tax lien, she must be a “judgment lien creditor” as that term is used in 26 U.S.C. § 6323.
As used in § 6323, “judgment lien creditor” is defined by Treasury Regulation 301.6323(h)-l(g) as “a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money,” and who “has perfected a lien under the judgment on the property involved.” 26 C.F.R. § 301.6323(h)-l(g) (emphasis added).
In this case, Collier contends that she perfected her lien on Charco’s property on October 21, 1996, when she domesticated her Virginia judgment by filing it in Mercer County, West Virginia. She argues therefore that her lien was valid against the IRS’ subsequently filed tax lien. Even though Collier did not record her judgment until January 1997 — after the IRS had recorded its tax lien — she argues that recordation was not required under West Virginia law to perfect her lien. She relies on West Virginia Code § 38-3-6, which provides in part that “every judgment for money rendered in this State ... shall be a lien on all the real estate of [the defendant].”
It is federal law, however, not state law, that defines when a judgment lien is “perfected”:
A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established.... If recording *305 or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. ...
26 C.F.R. § 301.6323(h)-l(g) (emphasis added). Thus, before a judgment lien is perfected, a judgment lienor must (1) identify the lienor, (2) identify the property-subject to the hen, (3) identify the amount of the lien, and (4) record the lien “[i]f recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property.” Id. The determinative question in this case is whether Collier had to record her judgment lien in order to perfect it, which depends on whether recording is required by local law “before a judgment becomes effective against third parties acquiring liens on real property.” Id. (emphasis added).
At oral argument counsel for the parties debated whether it was more natural to read “third parties acquiring liens on real property” as “any third party acquiring liens on real property” or as “all third parties acquiring liens on real property.” Neither position, however, captures precisely the clause’s meaning.[1] Ordinarily, an unmodified plural is used to describe a class of objects. For instance, a person who claims “to enjoy eating apples” does not necessarily claim to enjoy eating all apples. She very well might dislike overripe apples, or she might never have tried Granny Smith apples. For these reasons, she might not be satisfied if a friend just gave her any apple to eat. When she declares that she “enjoys eating apples,” she simply communicates that there exists a class of apples that she likes to eat. And if there are apples that she in fact enjoys, the claim about enjoying apples is an accurate one even if it does not include all apples.
Likewise, ordinary language analysis does not permit us to cabin “third parties acquiring liens on real property” with the limiting terms “one,” “any,” “some,” or “all.” These terms were not used in the Treasury Regulation, and we conclude deliberately so. The choice not to use such terms is justified with respect to — not because of — the regulatory background within which the Regulation operates. States have independent authority to create liens and to regulate how they become effective against others. Given the variations in state laws, it would have been impractical, if not impossible, for the regulation to have cataloged each type of third-party lienor against which a judgment in each State would have to “become effective” before it could have been perfected vis-á-vis a federal tax lien. Moreover, the class label accommodates changes in state lien laws without requiring a change in the regulation for each change in state law. In this case, therefore, we conclude that the use of an unmodified plural, “third parties,” identifies a class, the content of which varies with local lien laws.[2]
*306 Thus, we read the federal regulation to state that, to be considered a “judgment lien creditor” with priority over a federal tax lien, the creditor must perfect her judgment lien by recording it if a state has identified a class of third parties acquiring liens against whom a judgment is ineffective until it is recorded. Such a class of third parties need not include every possible third party acquiring a lien, for the federal regulation does not require recording only if state law requires recording against any or all third parties. Rather, the regulation requires recording against a class of third parties acquiring liens, no matter how many third party lienors are part of the state-defined class. Because we conclude that West Virginia law creates just such a class of third parties against whom a judgment creditor must record her judgment lien, we hold that a judgment lien creditor in West Virginia must record her judgment lien to be valid against a recorded federal tax lien.
In West Virginia, every judgment becomes a lien on real property at the date of judgment, W. Va.Code § 38-3-6, but those judgments are not liens against bona fide purchasers until they are recorded, W. Va.Code § 38-3-7. Although bona fide purchasers are third parties, they are not specifically third parties acquiring liens on real property, so this class would not be a class of third parties that fulfills the condition of the Treasury Regulation. But the West Virginia Supreme Court has extended § 38-3-7 to apply also to deed-of-trust creditors, and deed-of-trust creditors, who essentially are mortgagees, are indeed third parties acquiring liens on real property. See Cooper v. Cooper, 142 W.Va. 847, 98 S.E.2d 769, 772 (1957); Amato v. Hall, 115 W.Va. 79, 174 S.E. 686, 687 (1934); Weinberg v. Rempe, 15 W.Va. 829, 858 (1879).
In sum, West Virginia law identifies two distinct classes of third parties acquiring liens on real property—deed-of-trust creditors and everyone else. Although a West Virginia judgment is effective against the class of “everyone else” whether or not it is recorded, it is not effective against the class of “deed-of-trust creditors” unless recorded. Thus, recording is necessary under West Virginia law before a West Virginia judgment becomes effective against a class of third parties acquiring liens—deed-of-trust creditors— and the condition of the Treasury Regulation, therefore, is fulfilled. Collier accordingly would have to record her judgment lien in order to perfect it under federal law.
Although Congress could have retained absolute priority under the common law “first in time, first in right” rule, it was satisfied to have the IRS be treated no better and no worse than other third-party lienors under state law. Cf. United States v. Kimbell Foods, Inc., 440 U.S. 715, 738, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (observing that, in passing 26 U.S.C. § 6323, Congress “recognized the priority of many state claims over federal tax liens”). We note that our statutory interpretation in effect agrees with that of the Eleventh Circuit, which concluded, when interpreting other regulations promulgated under § 6323, that the regulations essentially grant the IRS “most favored nation” status so that it receives the best possible priority the state law would provide to a *307 third-party lienor. See In re Haas, 31 F.3d 1081,1089 (11th Cir.1994) (concluding that the Treasury Regulation “operates to the put the IRS in the shoes of any subsequent judgment creditor, including the most favorable shoes”).[3]
At bottom, we hold that if a State requires that a judgment be recorded before it is effective against a class of third parties acquiring liens on real property, an unrecorded judgment in the State is not, under the Treasury Regulation, effective against a recorded federal tax lien. Because West Virginia law does require re-cordation for a judgment lien to be valid against a class of third parties acquiring liens on real property — i.e., deed-of-trust creditors — the federal regulation requires Collier to record her judgment lien to be valid against a federal tax lien. Thus, Collier’s judgment lien obtained before the IRS recorded its federal tax lien was ineffective against the tax lien until it was recorded, and because it was recorded after the tax lien was recorded, the IRS lien has priority over Collier’s. Accordingly, the judgment of the district court is

AFFIRMED.

. Our dissenting colleague resorts to the same analysis, refusing to accept the text as written. The entire analysis of the dissent presupposes that the statutory reference to "third parties acquiring liens on real property” must mean either "all third parties” or "one third party.”

. The dissent’s conclusion that "third parties” means “all third parties” is driven by its fear that our interpretation requires recording even if a State’s class of third parties acquiring liens on real property has but one member. This outcome is untenable to the dissent because the entirety of the dissent’s analysis rests on a false dichotomy that "third parties” must mean either "all third parties” or "one third party,” the latter of which undercuts the drafter's use of the plural. Yet plurality is not only a matter of quantity, for, as we have shown, a plural word in common usage *306 serves when a quantity is unknown. It is conceivable that in a given case, the class of third parties acquiring liens on real property is made up of 0, 1, 10, 100, or "all” third parties acquiring liens on real property in a given State. But the actual quantity has no bearing on our interpretation of this regulation, which is a regulation that assigns rights and obligations before a given case event comes to court.

. Our citation to In re Haas highlights a decision of the Eleventh Circuit in which it relied on the contextual reasoning of the IRS Regulations to point out that the IRS would not, in adopting a recordation requirement, place itself in an inferior position with respect to the priority of liens when carrying out the task of collecting taxes. Contrary to what is suggested by the dissent, however, this reference does not drive our interpretation; rather it is cited to note that the result of our textual analysis is in conformity with a similar result reached by the Eleventh Circuit. Thus, the dissent incorrectly reads our opinion to say that we proceeded from the speculation of an IRS intent "without any regard for the text.” Of course, our holding is grounded entirely on an interpretation of the text, unmodified by the addition of words such as "all,” "any,” and "some.”