PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2249

In Re:  RESTIVO AUTO BODY, INC., d/b/a Restivo Auto Body &
Towing, Inc.,

              Debtor.

------------------------

SUSQUEHANNA BANK,

              Plaintiff - Appellee,

         v.

UNITED STATES OF AMERICA/INTERNAL REVENUE SERVICE,

              Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Ellen  L.  Hollander,  District  Judge.
(1:12-cv-03597-ELH; 11-18718; 11-00734)

Argued:  September 16, 2014          Decided:  October 31, 2014

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Affirmed  by  published  opinion.   Judge  Niemeyer  wrote  the
opinion,  in  which Judge Floyd joined.   Judge Wynn wrote a
separate opinion concurring in part and dissenting in part.

**ARGUED:** Bethany B. Hauser, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellant.  Ian Thomas Valkenet, YOUNG &
VALKENET, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Kathryn

Keneally, Assistant Attorney General, Bridget M. Rowan, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Thomas C. Valkenet, YOUNG & VALKENET, Baltimore, Maryland, for Appellee.

---

NIEMEYER, Circuit Judge:

In this appeal, we determine priority as between a tax lien filed by the Internal Revenue Service ("IRS") and a bank's security interest created by a deed of trust that was executed before the IRS filed its lien but recorded thereafter.

On January 4, 2005, Restivo Auto Body, Inc., of Eldersburg, Maryland, borrowed $1 million from Susquehanna Bank and secured repayment of the loan by executing and delivering to the Bank a deed of trust with respect to two parcels of real property. Six days later, on January 10, 2005, the IRS filed notice of a federal tax lien against Restivo Auto Body for unpaid employment taxes. On February 11, 2005, Susquehanna Bank recorded the deed of trust it had received on January 4, 2005.

Susquehanna Bank commenced this adversary proceeding in Restivo Auto Body's Chapter 11 bankruptcy case, seeking a judgment declaring that the security interest it acquired on January 4, 2005, had priority over the IRS's tax lien filed on January 10, 2005, regardless of the fact that it did not record its security interest until after the IRS had filed notice of its tax lien.

The district court granted Susquehanna Bank priority, ruling (1) that Md. Code Ann., Real Prop. § 3-201, related back Susquehanna Bank's subsequent recordation of its deed of trust to the date the deed of trust was executed and delivered, thus

3

giving Susquehanna Bank a security interest effective before the IRS recorded its tax lien; and alternatively (2) that Maryland common law, under the doctrine of equitable conversion, gave Susquehanna Bank a protected equitable security interest in Restivo Auto Body's property, regardless of recordation, when Restivo Auto Body executed the deed of trust in exchange for the $1 million loan on January 4, before the IRS recorded its tax lien.

We reject the district court's holding that Md. Code Ann., Real Prop. § 3-201 gives Susquehanna Bank retroactive priority over the IRS, concluding that 26 U.S.C. § 6323(h)(1)(A)'s use of the present perfect tense precludes giving effect to Real Prop. § 3-201's relation-back provision. We nonetheless affirm the judgment of the district court on the ground that under Maryland common law, Susquehanna Bank acquired an equitable security interest in the two parcels of real property on January 4, regardless of recordation, because its interest became "protected . . . against a subsequent lien arising out of an unsecured obligation" on that date and that therefore its security interest had priority over the IRS's tax lien under 26 U.S.C. § 6323(a) and § 6323(h)(1).

Restivo Auto Body failed to pay employment taxes for the fourth quarter of 2002, the first quarter of 2003, and the first and second quarters of 2004. The IRS issued notice and demand for payment of these deficiencies on or before September 20, 2004, giving rise to a tax lien on all property owned by Restivo Auto Body. On January 10, 2005, the IRS filed notice of its federal tax lien for the relevant quarters in the land records in the Circuit Court for Carroll County, Maryland.

On January 4, 2005, six days before the IRS filed notice of its federal tax lien, Restivo Auto Body borrowed $1 million from Susquehanna Bank, giving the Bank a note and a deed of trust on two adjacent parcels of real property on Enterprise Street in Eldersburg, Maryland -- Lots 17 and 39 -- to secure repayment of the loan. The deed of trust, however, was not recorded until February 11, 2005, more than a month after the IRS filed notice of its tax lien.

When Restivo Auto Body filed for Chapter 11 bankruptcy protection in April 2011, the IRS filed a proof of claim, stating that Restivo Auto Body owed it $62,438.99 in taxes, interest, and penalties for the relevant quarters. Susquehanna Bank thereupon commenced an adversary proceeding against the IRS, seeking a declaratory judgment as to the relative priorities of the parties' secured interests, and the parties

filed cross-motions for summary judgment. In claiming priority for the deed of trust that it received before the IRS filed its tax lien but recorded thereafter, Susquehanna Bank relied on Md. Code Ann., Real Prop. § 3-201, which relates back a deed of trust's effective date upon recordation to the date when the deed of trust was executed. The Bank also claimed a prior "equitable lien."

The bankruptcy court relied on WC Homes, LLC v. United States, Civil Action No. DKC 2009-1239, 2010 WL 3221845 (D. Md. Aug. 13, 2010), to hold that Md. Code Ann., Real Prop. § 3-201 relates back the effective date of Susquehanna Bank's deed of trust to January 4, 2005, six days before the IRS recorded its tax lien. The court explained:

> Why [Susquehanna Bank] would wait so long to record the lien, who knows? But that doesn't really matter for purposes of the analysis. [The] effective date is the most important thing, and the deed was recorded in such a way as . . . give it priority pursuant to [Md. Code Ann., Real Prop. § 3-201] over the government's claim.

The district court affirmed, again relying on WC Homes. The court stated that, under Maryland law, which is made applicable by 26 U.S.C. § 6323(h)(1)(A), "a recorded deed of trust is effective against any creditor of the person who granted the deed of trust as of the date the deed of trust was delivered (not the date it was recorded) regardless of whether the creditor did or did not have notice of the deed of trust at

6

any time." United States v. Susquehanna Bank (In re Restivo Auto Body, Inc.), Civil Action No. ELH-12-3597, 2013 WL 4067624, at *7 (D. Md. Aug. 12, 2013) (quoting Chi. Title Ins. Co. v. Mary B., 988 A.2d 1044, 1050 (Md. Ct. Spec. App. 2010)) (internal quotation marks omitted). It concluded accordingly that "as of when the IRS's lien was recorded, Susquehanna's [deed of trust] was already a 'security interest' that was entitled to priority under Maryland law and, hence, federal law." Id. at *6.

As an alternative basis for affirming the bankruptcy court, the district court held that Susquehanna Bank's security interest would have taken priority under Maryland law even if the deed of trust had never been recorded. The court reasoned that Maryland's doctrine of equitable conversion entitles the holder of a deed of trust to the same protections as a bona fide purchaser for value, who takes title free and clear of all subsequent liens regardless of recordation. Since 26 U.S.C. § 6323(h)(1)(A) gives an IRS tax lien only those protections that local law would afford to "a subsequent judgment lien arising out of an unsecured obligation," the court concluded that Susquehanna Bank's deed of trust took priority over the IRS's lien.

The IRS filed this appeal.

7

The priority of a federal tax lien is governed by federal law. See Aquilino v. United States, 363 U.S. 509, 513-14 (1960). Under federal law, a lien in favor of the IRS attaches to all property owned by a person who "neglects or refuses" to pay taxes for which he is liable after the IRS demands payment. 26 U.S.C. § 6321. The lien arises at the time the tax assessment is made, id. § 6322, and generally takes priority over a lien created after that date under the common-law principle that "the first in time is the first in right," United States v. City of New Britain, 347 U.S. 81, 85 (1954), even if the tax lien is unrecorded, see United States v. Snyder, 149 U.S. 210, 214 (1893). But a tax lien is not "valid as against any . . . holder of a security interest . . . until notice thereof . . . has been filed by the Secretary [of the Treasury]." 26 U.S.C. § 6323(a). As used in § 6323(a), a "security interest" is defined to mean "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability," id. § 6323(h)(1), and its existence at any given time depends on whether, inter alia, "the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation," id. § 6323(h)(1)(A).

The issue, in this context, is whether Maryland law gave Susquehanna Bank a security interest, as defined by § 6323(h)(1), when the Bank received a deed of trust to secure the repayment of its loan on January 4, even though it did not record the deed of trust until February 11. As the issue is a question of law, we review the judgment of the district court de novo.

The IRS contends that the district court misread § 6323(h)(1) in applying Md. Code Ann., Real Prop. § 3-201 to give Susquehanna Bank the retroactive benefit of its late recordation. In particular, it argues that § 6323(h)(1) requires the court to determine whether a security interest existed as of January 10 when the IRS filed its tax lien. And it notes that under § 6323(h)(1), a security interest only "exists" at such time as "the interest has become protected under local law." Emphasizing the text's use of the present perfect tense, it argues that Susquehanna Bank did not obtain an effective security interest as of January 10, but only as of February 11, when it recorded the deed of trust. Because Susquehanna Bank was not a holder of a security interest on January 10, according to the IRS, the federal tax lien became valid against the Bank by September 20, 2004, the last date on which the IRS assessed the tax deficiencies, and therefore the

9

federal tax lien takes priority under the common-law rule of first in time, first in right.

Susquehanna Bank argues that Maryland's relation-back statute is part of the "local law" and must, under § 6323(h)(1)(A), be given effect.

Our analysis begins with the determination of when, under Maryland law, a deed of trust becomes effective against subsequent judgment liens. See 26 U.S.C. § 6323(h)(1)(A). As a general proposition, Maryland specifies that a deed of trust is not effective unless it is "executed and recorded." Md. Code Ann., Real Prop. § 3-101(a). When the date of execution is earlier than the date of recordation, recordation relates back the deed's effective date to the date the deed was executed -- that is,"[e]very deed, when recorded, takes effect from its effective date," presumptively defined as the later of the date of the last acknowledgment or the date stated on the deed. Id. § 3-201. This means, according to Maryland case law, that a "recorded deed of trust is effective against any creditor of the person who granted the deed of trust" -- including a holder of a judgment lien -- "as of the date the deed of trust was delivered." Chi. Title Ins., 988 A.2d at 1050. Thus, where a deed of trust was executed on July 15, 2005, but remained unrecorded for over two years, the effective date of the deed of trust was nonetheless July 15, 2005, giving the deed of trust

10

priority over a lien arising from a judgment rendered after the execution date but before the recordation date. Id. at 1047-50; see also, e.g., Angelos v. Md. Cas. Co., 380 A.2d 646, 648 (Md. Ct. Spec. App. 1977) (holding that a mortgage took priority over a judgment lien under Real Prop. § 3-201, where the mortgage had been executed before, but recorded after, the institution of a lawsuit to obtain the judgment lien).

Thus, under Maryland law, when Susquehanna Bank recorded its deed of trust on February 11, 2005, the effective date of the deed of trust related back to January 4, 2005, when it was executed and delivered.

That conclusion, however, does not dispose of the question presented in this case, because the question here is not what interest Susquehanna Bank had on February 11, but rather, under 26 U.S.C. § 6323(a), whether Susquehanna Bank had a "security interest" at the time the IRS recorded its tax lien on January 10. Section 6323(h)(1)'s definition of that term focuses the priority determination on the date when the IRS filed notice of its tax lien, providing that a security interest must exist at the time of the IRS's recordation. In statutory language, Susquehanna Bank would have priority only "if, at such time [as the filing of the IRS's lien, January 10], the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an

11

unsecured obligation." 26 U.S.C. § 6323(h)(1)(A). On January 10, however, Susquehanna Bank had not yet triggered the relation-back statute because recordation was an essential element that had not then been satisfied. See Md. Code Ann., Real Prop. § 3-201 ("Every deed, when recorded, takes effect from its effective date" (emphasis added)); Chi. Title Ins., 988 A.2d at 1050 ("[Real Prop. § 3-201] plainly means that a recorded deed of trust is effective against any creditor of the person who granted the deed of trust as of the date the deed of trust was delivered" (emphasis added)). While Susquehanna Bank's subsequent recordation on February 11 gave its deed of trust an earlier effective date by operation of Real Prop. § 3-201, that statute had not yet been triggered as of the date on which the IRS filed notice of its tax lien. Thus, that statute had no bearing in determining whether Susquehanna Bank's security interest "had become protected" as of January 10.

The district court's analysis removed § 6323(h)(1)(A)'s temporal distinction from the statute and rendered the words "at such time . . . [as] the interest has become protected" superfluous, notwithstanding the Supreme Court's guidance to take account of Congress' use of verb tenses. See, e.g., United States v. Wilson, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes"). Tenses are particularly telling where Congress uses multiple tenses within

12

the same section. See Dickerson v. New Banner Inst., Inc., 460 U.S. 103, 116 (1983) (deriving meaning from Congress' use of the present and present perfect tenses within 18 U.S.C. § 922); Barrett v. United States, 423 U.S. 212, 217 (1976) ("[Congress] used the present perfect tense elsewhere in the same section . . . , in contrast to its use of the present tense [here]. The statute's pattern is consistent and no intended misuse of language or of tense is apparent").

Thus, we give effect to Congress' use of the present perfect tense in § 6323(h)(1)(A), especially since Congress used the present tense within the same sentence. See § 6323(h)(1) ("A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law" (emphasis added)). As a consequence, § 6323(h)(1) must be read to mean that at the time that the IRS filed its lien, a security interest must have been in existence and must have become protected under local law in order to obtain priority. Here, that means that as of January 10, 2005, Susquehanna Bank's security interest must have become protected by local law against subsequent judgment liens to deny the IRS priority. Yet, under Maryland law, as of January 10, Md. Code Ann., Real Prop. § 3-201 did not give Susquehanna Bank such protection. That statute did not operate to give Susquehanna

13

Bank a security interest until February 11, 2005, when it recorded its deed of trust.

The Sixth Circuit's opinion in Citizens State Bank v. United States, 932 F.2d 490 (6th Cir. 1991) (per curiam), provides substantial support for this conclusion. There, Citizens State Bank recorded a mortgage involving two tracts of land. Id. at 491. Thereafter, intending to release the mortgage on one of the tracts, the Bank inadvertently recorded a total release as to both tracts. Id. The IRS subsequently recorded a federal tax lien pursuant to 26 U.S.C. § 6321. Id. The Bank sought priority for its accidentally-released mortgage, arguing that since it, at some point, had a security interest that had become protected under local law, its mortgage had priority under § 6323(a). Id. at 493. Relying on the phrase "has become" in § 6323(h)(1)(A), the court rejected the Bank's interpretation of the statute:

> Congress intended the protection to cover present security interests which have been perfected at some point prior to the imposition of the federal tax lien. Thus, the language would exclude security interests which have not yet become perfected under local law, as well as those interests which have been released. . . . [T]he language "has become" suggests that Congress intended to cover only those security interests which exist presently, and have become valid prior to the federal tax lien.

Id. (emphasis added).

14

In short, although Maryland's relation-back law retroactively validated Susquehanna Bank's security interest, it had not so operated as of January 10, 2005, when the IRS recorded its tax lien.

This interpretation is precisely the one adopted in Treas. Reg. § 301.6323(h)-1(a)(2). That regulation provides:

> For purposes of this paragraph, a security interest is deemed to be protected against a subsequent judgment lien on --
>
> > (A) The date on which all actions required under local law to establish the priority of a security interest against a judgment lien have been taken, or
> >
> > (B) If later, the date on which all required actions are deemed effective, under local law, to establish the priority of the security interest against a judgment lien.
>
> For purposes of this subdivision, <u>the dates described in (A) and (B) of this subdivision . . . shall be determined without regard to any rule or principle of local law which permits the relation back of any requisite action to a date earlier than the date on which the action is actually performed</u>.

Treas. Reg. § 301.6323(h)-1(a)(2) (emphasis added).

Susquehanna Bank argues that we should not rely on the regulation because the statute that the regulation interprets unambiguously gives effect to local law -- here, Md. Code Ann., Real Prop. § 3-201 -- which, it maintains, "protects recorded security interests from the date of delivery, irrespective of the date of recordation." This interpretation, however,

15

overlooks the language of § 6323(h)(1), which, as we have already pointed out, requires that the evaluation of Susquehanna Bank's security interest be made as of the date that notice of the federal tax lien was filed. Because Susquehanna Bank had not, as of that date, recorded its deed of trust, the relation-back provision in Real Prop. § 3-201, which applies only to a deed "when recorded," did not yet apply.

Even if Susquehanna Bank's argument were recognized to demonstrate a statutory ambiguity, the Treasury Regulation would nonetheless be enforceable if it were a permissible construction of the statute. "[A] court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in the judicial proceeding." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.11 (1984). Instead, "any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." United States v. Mead Corp., 533 U.S. 218, 227 (2001).

We conclude that the regulation is indeed a permissible construction of § 6323(h)(1)(A). For the reasons we have already given above, the present perfect tense used in § 6323(h)(1)(A) precludes the subsequent retroactive creation of

16

a security interest. In addition, the legislative history of the Federal Tax Lien Act of 1966, Pub. L. No. 89-719, 80 Stat. 1125 (codified in scattered sections of 26 U.S.C.), demonstrates that Congress wanted to bypass state laws that relate back a deed's date of priority to an earlier date. The Senate Report states specifically that "[f]or Federal tax purposes, a security interest is not considered as existing until the condition set forth here" -- namely, the requirements listed in § 6323(h)(1) -- "are met even though local law may relate a security interest back to an earlier date . . . ." S. Rep. No. 89-1708, at 13 (1966). And the House Report expresses the same view:

> For purposes of [§ 6323(h)(1)(A)], a security interest becomes protected against a subsequent judgment lien on the date on which all actions required under local law to establish the priority of the security interest against such a judgment lien have been taken, or, if later, the date on which all such actions are deemed effective, under local law, to establish such priority. Therefore, a security interest comes into existence only at the time prescribed in the preceding sentence <u>notwithstanding any rule or principle of local law which permits the relation back of any requisite action to a date earlier than the date on which it is actually performed</u>.

H.R. Rep. No. 89-1884, at 49 (1966) (emphasis added).

Our conclusion that the Treasury Regulation is a reasonable construction of 26 U.S.C. § 6323(h)(1)(A) is bolstered by the fact that federal courts have, with one exception, uniformly

17

applied it to bar state laws that would otherwise permit later actions to relate back in time, without any suggestion that it might be an impermissible construction of the statute. See Haas v. IRS (In re Haas), 31 F.3d 1081, 1091 (11th Cir. 1994) (holding that, although Alabama state law would give a mortgagee who erroneously recorded a release of a mortgage an equitable right to have the mortgage retroactively reinstated, reinstatement would have resulted in relating back the perfection of the mortgage to the original recording date, in violation of Treas. Reg. § 301.6323(h)-1(a)(2)); Flagstar Bank, FSB v. Eerkes, No. C12-1951RSL, 2014 WL 4384063, at *1-2 (W.D. Wash. Sept. 4, 2014) (granting reformation of a deed of trust describing the wrong parcel of land, but holding that the reformed deed was inferior to a federal tax lien under Treas. Reg. § 301.6323(h)-1(a)(2)'s prohibition against relation-back rules); Regions Bank v. United States, No. 3:12-cv-21, 2013 WL 635615, at *3 (E.D. Tenn. Feb. 20, 2013) (reaching same result as Haas under similar facts); Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Phipps, Civil No. L-10-1271, 2011 WL 1322393, at *2-3 (D. Md. Apr. 1, 2011) (assuming that a deed of trust could be amended to include a mistakenly omitted purchaser or that an equitable lien could be imposed under state law, but holding that those remedies could only have forward-looking effects pursuant to Treas. Reg. § 301.6323(h)-1(a)(2)). But see

18

<u>WC Homes, LLC v. United States</u>, Civil Action No. DKC 2009-1239, 2010 WL 3221845, at *3-4 (D. Md. Aug. 13, 2010) (concluding that Treas. Reg. § 301.6323(h)-1(a)(2) was not entitled to deference because the statute was unambiguous).

In short, while we read § 6323(h)(1)(A) unambiguously to preclude the application of Md. Code Ann., Real Prop. § 3-201, we also conclude that the Treasury Department's construction of § 6323(h)(1)(A) in explicitly precluding the application of a relation-back rule is a permissible one. Thus, we find that the district court misinterpreted § 6323(h)(1)(A) in ruling that Real Prop. § 3-201 gave Susquehanna Bank a prior security interest.

III

Apart from its application of Md. Code Ann., Real Prop. § 3-201, the district court also concluded that Susquehanna Bank had a prior security interest under § 6323(h)(1)(A), based on the Maryland doctrine of equitable conversion. The court explained that under Maryland law, "the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining a judgment subsequent to the execution of the contract." <u>Susquehanna Bank</u>, 2013 WL 4067624, at *7 (quoting <u>Stebbins-Anderson Co. v. Bolton</u>, 117 A.2d 908, 910 (Md. 1955)) (internal quotation marks omitted). And it pointed out that the

19

doctrine applies to lenders whose interests are secured by mortgages or deeds of trust.  Construing § 6323(h)(1)(A), the court concluded that "an IRS tax lien is entitled only to the protection due under state law to 'a subsequent judgment lien arising out of an unsecured obligation'" id. (quoting § 6323(h)(1)(A)), and that, under Maryland law, as made applicable by § 6323(h)(1)(A), judgment liens are "subject to prior, undisclosed equities," id. (quoting Wash. Mut. Bank v. Homan, 974 A.2d 376, 389 (Md. Ct. Spec. App. 2009)) (internal quotation marks omitted).

We agree with the district court that § 6323(h)(1)(A) incorporates Maryland law insofar as it protects equitable security interests against subsequent judgment-creditor liens.

The Maryland doctrine of equitable conversion "emanates from the maxim that 'equity treats that as being done which should be done.'"  Noor v. Centreville Bank, 996 A.2d 928, 932 (Md. Ct. Spec. App. 2010) (quoting Himmighoefer v. Medallion Indus., Inc., 487 A.2d 282, 286 (Md. 1985)).  Pursuant to that doctrine, upon contracting to buy land, "in equity the vendee becomes the owner of the land, the vendor of the purchase money."  Id. (quoting Himmighoefer, 487 A.2d at 286).  Although the seller retains legal title during the executory period, he has "no beneficial interest in the property" apart from his "right to the balance of the purchase money."  Watson v. Watson,

20

497 A.2d 794, 800 (Md. 1985). Rather, he holds his legal title "in trust for the purchaser." Wolf Org., Inc. v. Oles, 705 A.2d 40, 45 (Md. Ct. Spec. App. 1998). By contrast, a holder of equitable title "retains a significant interest in the enforcement of a land sales contract." Wash. Mut. Bank, 974 A.2d at 388. Consistent with these principles, Maryland courts have repeatedly held that a land purchaser's equitable title is superior to any judgment lien subsequently obtained against the seller. See, e.g., Watson, 497 A.2d at 800; Wolf Org., 705 A.2d at 46–47. As Maryland's Court of Appeals explained in Himmighoefer:

> It is a general rule that the holder of an equitable title or interest in property, by virtue of an unrecorded contract of sale, has a claim superior to that of a creditor obtaining judgment subsequent to the execution of the contract. . . . The right of the vendee to have the title conveyed upon full compliance with the contract of purchase is not impaired by the fact that the vendor, subsequently to the execution of the contract, incurred a debt upon which judgment was recovered. A judgment creditor stands in the place of his debtor, and he can only take the property of his debtor subject to the equitable charges to which it is liable in the hands of the debtor at the time of the rendition of the judgment.

487 A.2d at 287 (quoting Stebbins-Anderson Co., 117 A.2d at 910) (internal quotation marks and citations omitted). A judgment creditor's lien cannot attach to a seller's bare legal title in the property after the seller has conveyed equitable title, because the seller's legal title is a mere "technicality." Wolf

21

Org., 705 A.2d at 46. Nor can the judgment creditor's lien attach to the seller's equitable interest in the property, because that interest has already become "vested in another." Id.

Moreover, the Maryland doctrine of equitable conversion protects the security interest of a purchaser regardless of the purchaser's compliance with the recordation statutes. The recordation statutes protect only bona fide purchasers. See Lewis v. Rippons, 383 A.2d 676, 680 (Md. 1978) (holding that because a party was not a bona fide purchaser, "the recording statute avail[ed] him not"); see also Greenpoint Mortg. Funding, Inc. v. Schlossberg, 888 A.2d 297, 308 (Md. 2005); In re Careful Laundry, 104 A.2d 813, 818 (Md. 1954). And Maryland law is clear that "a judgment creditor is not in the position of a bona fide purchaser." Kolker v. Gorn, 67 A.2d 258, 261 (Md. 1949); see also, e.g., Himmighoefer, 487 A.2d at 287; Stebbins-Anderson Co., 117 A.2d at 910; Chi. Title Ins., 988 A.2d at 1050; Wash. Mut. Bank, 974 A.2d at 389; Chambers v. Cardinal, 935 A.2d 502, 511 (Md. Ct. Spec. App. 2007). Thus, a judgment creditor's claim "is subject to prior, undisclosed equities" and "must stand or fall by the real, and not the apparent rights of the defendant in the judgment." Kolker, 67 A.2d at 261 (quoting Ahern v. White, 39 Md. 409, 421 (1874)) (internal quotation marks omitted).

22

This traditional scheme of real property law and equity does not render Md. Code Ann., Real Prop. § 3-201's recordation requirement a nullity, as the district court recognized. Bona fide purchasers remain incentivized to record their interests to achieve priority against other bona fide purchasers. See Md. Code Ann., Real Prop. § 3-203.

While Susquehanna Bank did not sign a contract to purchase Restivo Auto Body's real property, it did receive a conditional deed to secure repayment of its loan. And Maryland principles in equity "treat lenders who secure their interests with a mortgage or deed of trust as entitled to the protections available to bona fide purchasers for value," so long as those lenders act in good faith. Wash. Mut. Bank, 974 A.2d at 396; see also Silver v. Benson, 177 A.2d 898, 902 (Md. 1962) ("It is well settled that in circumstances where a deed is set aside for fraud, a mortgagee not a party to the fraud is entitled to the protection afforded a bona fide purchaser by a court of equity, to the extent of his interest"). Consequently, a lender's equitable interest in secured property is superior to the interest of subsequent judgment lienholders. Taylor Elec. Co., Inc. v. First Mariner Bank, 992 A.2d 490, 502 (Md. Ct. Spec. App. 2010) ("The overwhelming weight of authority is that once a bona fide purchaser or lender for value acquires title by way of execution of a contract for sale or valid mortgage, the

23

purchaser or <u>mortgagee</u> takes title free and clear of any subsequent lien" (emphasis added and omitted)).

These principles are not unique to Maryland, which applies traditional equitable principles to traditional real property law. See <u>Hellmann v. Circle C Props. I, Ltd.</u>, No. 04-03-00217-CV, 2003 WL 22897220, at *2-3 (Tex. Ct. App. Dec. 10, 2003) (holding that a lender who held a deed of trust had priority over a debtor's subsequent judgment creditor); <u>Suffolk Cnty. Fed. Sav. & Loan Ass'n v. Geiger</u>, 57 Misc. 2d 184, 186 (N.Y. Sup. Ct. 1968) (holding that a mortgagee had priority over a subsequent judgment lienholder).

Applying these principles in this case, Susquehanna Bank took equitable title to Lots 17 and 39 when Restivo Auto Body executed a deed of trust and delivered it to the Bank on January 4, 2005. That equitable title gave Susquehanna Bank priority over all of Restivo Auto Body's subsequent judgment-creditor lienholders. And because federal tax law subordinates a federal tax lien to a deed of trust that has become protected "against a subsequent judgment lien arising out of an unsecured obligation," 26 U.S.C. § 6323(h)(1)(A), Susquehanna Bank's equitable security interest, which had become protected on

24

January 4, 2005, had priority over the IRS's lien under § 6323(a).[*]

The IRS's arguments to the contrary are unavailing. First, noting that Maryland's equitable conversion cases all involve belatedly recorded deeds, rather than deeds that were never recorded at all, the IRS argues that those cases "involved the application of the relation-back principle" of Md. Code Ann., Real Prop. § 3-201 and are therefore subject to that statute's

---

[*] Dissenting from this part of the opinion, Judge Wynn argues that the IRS's tax lien "was not a subsequent lien" because the IRS's lien arose "at the time the assessment [was] made" on September 20, 2004. But that is wholly beside the point. Equitable conversion protected Susquehanna Bank from subsequent judgment liens as of January 4, 2005. Because, under the Tax Code, a security interest "exists" when it "has become protected under local law against a subsequent judgment lien," § 6323(h)(1)(A) (emphasis added), Susquehanna Bank became the holder of a security interest as of that date. While the IRS's lien became effective against Restivo Auto Body, the delinquent taxpayer, on September 20, 2004, id. § 6322, it was not valid against Susquehanna Bank, the holder of a security interest, until the IRS filed notice of the lien on January 11, 2005, id. § 6323(a). This opinion does not overturn United States v. Bond, 279 F.2d 837 (4th Cir. 1960), which recognized that, in 1913, Congress "partially abrogate[d] the effect of the secret, unrecorded lien" in § 6323(a) "by requiring recordation of the federal tax lien to render it valid as against mortgagees, pledgees, purchasers and judgment creditors." Id. at 841. Congress subsequently amended § 6323(a) to make unrecorded tax liens ineffective against holders of security interests as well.

In short, our argument is not, as Judge Wynn claims, that the IRS's tax lien is equivalent to a judgment lien. Rather, the Tax Code subordinates unrecorded tax liens to security interests, and it defines security interests according to their protection under state law against subsequent judgment liens. See 26 U.S.C. § 6323(h)(1)(A).

25

recordation requirement. This argument, however, overlooks the fact that Maryland courts have applied the doctrine of equitable conversion to grant priority to equitable titleholders since well before the enactment of Real Prop. § 3-201 in 1974. See, e.g., Stebbins-Anderson Co., 117 A.2d at 910. And cases decided after 1974 have likewise applied equitable conversion to subordinate judgment liens to subsequently recorded deeds without invoking Real Prop. § 3-201, demonstrating that Real Prop. § 3-201 and equitable conversion are logically independent. See Himmighoefer, 487 A.2d at 287-88; Grant v. Kahn, 18 A.3d 91, 96-97 (Md. Ct. Spec. App. 2011). Indeed, several cases applying equitable conversion make no mention of the deed's recordation, indicating that recordation is irrelevant to the doctrine's application. See Noor, 996 A.2d at 938; Wolf Org., 705 A.2d at 45-50. In short, we must accept the Maryland Court of Appeals at its word when it said that equitable conversion "does not depend upon actual notice to the creditor." Stebbins-Anderson Co., 117 A.2d at 910.

Second, the IRS contends somewhat obliquely that the district court's analysis improperly combined an equitable doctrine with the technical elements of a detailed federal statutory scheme. A straightforward consideration of the text, however, puts this argument to rest. Section 6323(h)(1)(A) defines a "security interest" as an interest that is enforceable

26

against subsequent judgment creditors under local law. Maryland's doctrine of equitable conversion is local law, and it makes Susquehanna Bank's deed of trust enforceable against subsequent judgment creditors. Nowhere does § 6323(h)(1)(A) limit local law to exclude established principles of state common law. Moreover, federal courts have often invoked equitable principles of state law when applying § 6323(h)(1)(A). See Haas, 31 F.3d at 1091 (holding that state equitable principles would retroactively reinstate an erroneously released mortgage but that those principles were nonetheless barred by Treas. Reg. § 301.6323(h)-1(a)(2)'s prohibition against relation back); Regions Bank, 2013 WL 635615, at *2-3 (same); Bank of N.Y. Mellon Trust, 2011 WL 1322393, at *2–3 (assuming arguendo that state equitable principles would retroactively impose an equitable mortgage where a deed of trust accidentally omitted the name of a purchaser, but holding that those principles were barred by Treas. Reg. § 301.6323(h)-1(a)(2)).

Pointing to Angelos v. Maryland Casualty Co., the IRS responds that Maryland's own courts do not combine the doctrine of equitable conversion with the technical elements of § 6323(h)(1)(A) when determining priority of a lien relative to a competing federal tax lien. In Angelos, the IRS intervened in a dispute over lien priority between a judgment creditor and Angelos, the holder of a third mortgage, asserting that its tax

27

liens deserved priority over the judgment creditor's lien. 380 A.2d at 647. While the factual record was insufficient to decide conclusively the IRS's priority, the court endeavored to guide the lower court on remand. Id. at 649-50. It noted that the IRS had conceded that its tax lien was subordinate to Angelos' lien because the tax lien "came not only after Angelos' mortgage was executed, but after it was recorded as well." Id. at 650. Far from rejecting application of the doctrine of equitable conversion in determining tax lien priority, the court in Angelos had no need to consider the doctrine in light of the IRS's admission that Angelos' lien was entitled to priority. Even if the IRS had not conceded its inferior lien position, Md. Code Ann., Real Prop. § 3-201 would have afforded Angelos priority because Angelos' mortgage was recorded before the IRS filed notice of its tax lien, making reliance on equitable conversion unnecessary and, in the circumstances, irrelevant.

Third, the IRS maintains that Susquehanna Bank does not qualify as a statutory purchaser entitled to priority under 26 U.S.C. § 6323(a). Section 6323(h)(6) defines "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." Under Maryland law, until recordation, a purchaser's property interest

28

"is subject to destruction by a conveyance of the legal title to a bona fide purchaser without notice." <u>Bourke v. Krick</u>, 304 F.2d 501, 504 (4th Cir. 1962). Since Susquehanna Bank had not yet recorded its property interest when the IRS filed notice of its federal tax lien, the IRS contends that Susquehanna Bank's property interest was not "valid under local law against subsequent purchasers without actual notice." Although the IRS may be correct that Susquehanna Bank was not a statutory purchaser, that point is wholly beside the point. Maryland's doctrine of equitable conversion does not transform lenders into purchasers. Rather, it "entitle[s] [lenders] to the protection afforded" by Maryland law to bona fide purchasers. <u>Silver</u>, 177 A.2d at 902. <u>As a lender</u> secured by a deed of trust, Susquehanna Bank acquired equitable title on January 4, 2005, when Restivo Auto Body executed the deed of trust, giving the Bank priority over any subsequent judgment liens obtained against Restivo Auto Body. As such, on January 4, Susquehanna Bank had a <u>security interest</u>, as defined in § 6323(h)(1), giving it priority over the IRS's later-recorded tax lien, pursuant to § 6323(a).

Fourth, the IRS contends that a party cannot convey an interest in property that it does not have. It notes that its tax lien attached to Restivo Auto Body's property on or before September 20, 2004, when the tax deficiencies were assessed.

29

See 26 U.S.C. § 6322. Therefore, it maintains that Restivo Auto Body's property was already encumbered when it executed a deed of trust to Susquehanna Bank on January 4, 2005, precluding Restivo Auto Body from conveying an unencumbered interest in Lots 17 and 39. This argument is a red herring. It is all too common that a property holder fraudulently conveys the same interest in his property to various parties. Even though the property holder does not hold an unencumbered interest when conveying that interest to a second purchaser or mortgagee, property law often places title in fee simple in the second purchaser or mortgagee as long as it obtained its interest in good faith. For example, under Maryland's race-notice statute, a second bona fide purchaser who beats the first bona fide purchaser in the race to record takes good title to the property. Md. Code Ann., Real Prop. § 3-203. Section 6323(a) is no different. Where a delinquent taxpayer executes a deed of trust to a lender after a federal tax lien has attached to the same property but before the IRS has filed notice thereof, priority vests in the holder of the security interest created by the deed of trust.

Finally, the IRS insists that applying the equitable principles of Maryland law would ignore the Supreme Court's effort to interpret federal tax laws in such a manner as not to place the collection of taxes, and thereby "the potential

30

existence of the government of the United States[,] . . . at the mercy of state legislation." Snyder, 149 U.S. at 214. But federal tax laws, namely 26 U.S.C. § 6323(h)(1)(A), mandate that result with respect to tax lien priority by expressly incorporating local law into the definition of "security interest." As we stated in Collier v. United States (In re Charco, Inc.), 432 F.3d 300 (4th Cir. 2005), "[a]lthough Congress could have retained absolute priority under the common law 'first in time, first in right' rule, it was satisfied [in § 6323] to have the IRS be treated no better and no worse than other third-party lienors under state law." Id. at 306 (emphasis added and omitted). Congress remains free to amend § 6323 to make federal tax collection less susceptible to state law doctrines if it fears that the incorporation of local law may imperil the federal fisc. But we must take § 6323 as it now reads.

For the reasons given, we affirm the judgment of the district court.

AFFIRMED

WYNN, Circuit Judge, concurring in part and dissenting in part:

I join in Parts I and II of the majority opinion. However, I cannot join in Part III, which holds that Susquehanna Bank's interest in Restivo Auto Body's land is protected by equitable conversion. I would reverse the district court and hold that Susquehanna Bank has no interest sufficient to defeat the IRS's tax lien on the land. Accordingly, I respectfully dissent.

## I.

As the majority recognizes, the priority of federal tax liens is governed by federal law. Supra at 8 (citing Aquilino v. United States, 363 U.S. 509, 513-14 (1960)). Federal law makes it clear that Restivo Auto Body did not have an unencumbered title to which it could give Susquehanna Bank an interest.

Specifically, under the Internal Revenue Code, the type of tax lien at issue here "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied[.]" 26 U.S.C. Section 6322 (emphasis added). This Court has held that for such a lien to become "valid and effective . . . notice, filing or recording are not required." United States v. Bond, 279 F.2d 837, 841 (4th Cir. 1960).

32

Here, no one disputes that the IRS assessed the tax deficiencies on September 20, 2004.  From that date forward, then, the property was encumbered by the IRS tax lien.  And it would be over three months before Susquehanna Bank even entered the picture.  Despite what the majority argues in its footnote at supra at 25, this is precisely the point.  The majority applies state law to determine the priority of the IRS's tax lien to the property.  It does so by blurring the line between the IRS and a judgment creditor and between a tax lien and a judgment lien without citing any precedent that allows it to do so.  See supra at 20 ("We agree with the district court that Section 6323(h)(1)(A) incorporates Maryland law insofar as it protects equitable security interests against subsequent judgment-creditor liens" (this begs the question as to what the "subsequent judgment-creditor lien" is if not the tax lien)); supra at 22 ("The recordation statutes protect only bona fide purchasers. . . . And Maryland law is clear that 'a judgment creditor is not in the position of a bona fide purchaser.'" (again, who is the "judgment creditor" if not the IRS?)).

Based on this blurred understanding, it then applies Maryland equitable principles to declare that Susquehanna Bank's interest is superior to a subsequent judgment lien.  While the majority may be right in its interpretation of Maryland's equitable principles, it is wrong in applying them to this case.

33

There is no judgment lien here.  There is a tax lien.  And its priority in this scheme is determined solely by federal law.

This Court has made it clear that filing is not necessary for a tax lien to become effective, Bond, 279 F.2d at 841, and the majority does not claim to be overturning this binding precedent.   Therefore the IRS's tax lien was "valid and effective" as of September 20, 2004, well before Susquehanna Bank had any security interest.   In fact, in Ruggerio v. United States, 153 Fed. Appx. 242 (4th Cir. 2005) (unpublished), another panel of this Court analyzed Maryland's equitable conversion principle as it related to granting priority to a mortgage holder over a federal tax lien.   In that case, this Court stated that:

> We have noted that "the Maryland law is that legal title to land does not pass until a deed is properly executed and recorded, and . . . until this is done a vendee's equity in property is subject to destruction by a conveyance of the legal title to a bona fide purchaser without notice."  Hence, under Maryland law, Ruggerio's [the mortgage holder] interest in the Property would be invalid against subsequent purchasers without notice.  Because Ruggerio's interest in the Property was subject to destruction under Maryland law by subsequent purchasers without actual notice, he did not qualify as a "purchaser" under Section 6323(b) of the IRC before April 7, 2003 [the date IRS gave notice of its tax lien].  Thus, the federal tax liens on the Property remain valid against Ruggerio.

34

<u>Id</u>. at 244-45 (citations omitted). Further, the Court in <u>Ruggerio</u> added in a footnote, "To the extent that Ruggerio may have achieved 'purchaser' status after April 7, 2003, the federal tax liens on the Property remain valid against him based on the antecedent filing of tax notices." <u>Id</u>. at 245 fn (citing 26 U.S.C. Section 6323(a)). It thus held that the mortgage holder did not have priority over the federal tax lien, even though notice was given after the mortgage was conveyed.

As the majority opinion notes, Maryland's equitable conversion doctrine protects "a land purchaser's equitable title" as "superior to any judgment lien <u>subsequently</u> obtained against the seller." <u>Supra</u> at 21 (citing <u>Watson v. Watson</u>, 497 A.2d 794, 800 (Md. 1985)) (emphasis added).[*] But the IRS's interest here predates that of Susquehanna Bank. The IRS filed notice of its lien subsequent to Susquehanna Bank's loan—but the interest itself arose and became protected at an earlier date. It therefore was not a <u>subsequent</u> lien. And because the IRS's interest is not a <u>subsequent</u> lien, the principles the majority

---

[*] The Appellee's brief before this Court barely addresses this alternative holding of the district court. In fact, their brief only discusses the concept of "equitable conversion" by quoting from <u>Stebbins-Anderson Co. v. Bolton</u>, 208 Md. 183, 187-88 (1955), to support their argument for application of Maryland's relation back principle, which this Court rejects in Part II of the majority's opinion.

cites about protecting purchasers or other interest holders against "subsequent judgment liens" are beside the point.

## II.

This case should be governed by the priority principle of "first in time is first in right." United States v. City of New Britain, 347 U.S. 81, 85 (1954). Here, the IRS's interest in the property attached on September 20, 2004. The earliest possible date, even under equitable theories, that Susquehanna Bank's interest could have attached is January 4, 2005. The IRS therefore had an interest in the land a full 106 days prior to Susquehanna Bank's earliest potential date of possessing an interest. It thus has the first right to the land to fulfill Restivo Auto Body's tax obligations. Accordingly, I respectfully dissent as to Part III and the final judgment.